JS 44  (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Marcel Boddie

**DEFENDANTS**

Philadelphia Anti-Drug Anti-Violence Network, Urban Affairs Coalition and George Mosee, Jr., et al.

**(b)** County of Residence of First Listed Plaintiff    Philadelphia
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Philadelphia
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

BenjaminCHoffman,Esq.,Clearfield&Kofsky,1617JFKBlvd, 1Penn Center,Ste355,Phila,PA 19103,(215)563-6333

Attorneys *(If Known)*

FrancisJDeasey,Esq.,MichaelP.Rausch,Esq.,LaurenM.Steins,Esq.,Deasey,Mahoney&Valentini,Ltd,1601 Market Street,Ste3400,Phila,PA 19103,(215)587-9400

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☒ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | ☐ 820 Copyrights | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 460 Deportation |
| | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | **SOCIAL SECURITY** | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | | | ☐ 790 Other Labor Litigation | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 791 Employee Retirement Income Security Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1 Original Proceeding | ☒ 2 Removed from State Court |
| ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened |
| ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer |
| ☐ 8 Multidistrict Litigation - Direct File | |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. Section 1983

Brief description of cause:
Civil Rights Violation

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**
in excess of $50,000

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☐ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE  4.3.2024

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ 2816 N. 21st Street, Philadelphia, PA  19132 _____

Address of Defendant: _____ 2700 N. 17th Street, Suite 200, Philadelphia, PA 19132 _____

Place of Accident, Incident or Transaction: _____ 2478 N. 29th Street, Philadelphia, PA 19132 _____

---

*RELATED CASE, IF ANY:*

Case Number: _____   Judge: _____   Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?   Yes ☐   No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?   Yes ☐   No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?   Yes ☐   No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?   Yes ☐   No ☑

I certify that, to my knowledge, the within case ☐ **is** / ☑ **is not** related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: _4/3/2024_   _[signature]_   _314105_
                   *Attorney-at-Law / Pro Se Plaintiff*   *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

*A.*      *Federal Question Cases:*

☐  1.  Indemnity Contract, Marine Contract, and All Other Contracts
☐  2.  FELA
☐  3.  Jones Act-Personal Injury
☐  4.  Antitrust
☐  5.  Patent
☐  6.  Labor-Management Relations
☑  7.  Civil Rights
☐  8.  Habeas Corpus
☐  9.  Securities Act(s) Cases
☐ 10.  Social Security Review Cases
☐ 11.  All other Federal Question Cases
       *(Please specify):* _____

*B.*      *Diversity Jurisdiction Cases:*

☐  1.  Insurance Contract and Other Contracts
☐  2.  Airplane Personal Injury
☐  3.  Assault, Defamation
☐  4.  Marine Personal Injury
☐  5.  Motor Vehicle Personal Injury
☐  6.  Other Personal Injury *(Please specify):* _____
☐  7.  Products Liability
☐  8.  Products Liability – Asbestos
☐  9.  All other Diversity Cases
       *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____, counsel of record *or* pro se plaintiff, do hereby certify:

☐  Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐  Relief other than monetary damages is sought.

DATE: _____   *Sign here if applicable* _____   _____
                          *Attorney-at-Law / Pro Se Plaintiff*   *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | |
|---|---|
| MARCEL BODDIE | CIVIL ACTION NO. |
| v. | |
| HENNYS SPORTS BAR, ET AL. | |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants.  (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a)  Habeas Corpus – Cases brought under 28 U.S.C. §2241 through §2255.                ( )

(b)  Social Security – Cases requesting review of a decision of the Secretary of Health
and Human Services denying plaintiff Social Security Benefits                           ( )

(c)  Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d)  Asbestos – Cases involving claims for personal injury or property damage from
exposure to asbestos.                                                                   ( )

(e)  Special Management – Cases that do not fall into tracks (a) through (d) that are
commonly referred to as complex and that need special or intense management by
the court.  (See reverse side of this form for a detailed explanation of special
management cases.)                                                                      ( )

(f)  Standard Management – Cases that do not fall into any one of the other tracks.      (X)

| | | |
|---|---|---|
| 04/03/2024 | | Philadelphia Anti-Drug Anti Violence. |
| **Date** | **Attorney-at-law** | **Attorney for Defendants** |
| (215) 587-9400 | (215) 587-9456 | lsteins@dmvlawfirm.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Marcel Boddie | : | Civil Action: |
| Plaintiff, | : | |
| v. | : | **Removed From:**<br>**Court of Common Pleas**<br>**of Philadelphia County** |
| Henny's Sports Bar,<br>Antonio Jardine a/k/a Mark Cooper,<br>29th HHS, Inc.,<br>Philadelphia Anti-Drug Anti-Violence<br>Network,<br>George Mosee, Jr.,<br>Erica Atwood,<br>Shondell Revell,<br>City of Philadelphia,<br>Lyly Sok,<br>Davuth Eng, and<br>Urban Affairs Coalition | : | |
| Defendants. | : | |

### PETITION FOR REMOVAL

***PLEASE TAKE NOTICE*** that Defendants, Urban Affairs Coalition, Philadelphia Anti-Drug Anti-Violence Network, and George Mosee, Jr. (hereinafter collectively "Defendants"), by and through their undersigned counsel hereby remove this action from the Court of Common Pleas of Philadelphia County, Pennsylvania, to the United States District Court for the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1441, *et seq.*, as follows:

1.  On March 4, 2024, Plaintiff, Marcel Boddie (hereinafter "Plaintiff"), filed a Complaint in the Court of Common Pleas of Philadelphia County, Pennsylvania, docketed as Case No. 240300240. A true and correct copy of the Complaint is attached hereto as Exhibit "A".

#11746935v1

2.      Plaintiff's Complaint alleges claims for: 1) state-created danger pursuant to 42 U.S.C. § 1983; and 2) *Monell* liability pursuant to 42 U.S.C. § 1983.

3.      Defendants were served with a copy of the Complaint on or about March 18, 2024.

4.      Defendant Antonio Jardine, a/k/a Mark Cooper has not yet been served with the complaint. A true and correct copy of the state court dockets is attached hereto as Exhibit "B".

5.      All Defendants who have been served with the Complaint consent to the removal of this matter. A true and correct copy of the correspondence from counsel for these Defendants is attached hereto as Exhibit "C".

6.      This Notice of Removal is filed within thirty (30) days after receipt of the Complaint by Defendants.

7.      The United States District Court for the Eastern District of Pennsylvania has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 and 1343.

8.      The proper venue for removal jurisdiction is the United States District Court for the Eastern District of Pennsylvania because it embraces the place where the action is pending and the place where many of the alleged acts and omissions took place.

9.      Written notice of the filing of this Notice of Removal is being forwarded promptly to Plaintiff's counsel and the Prothonotary of the Pennsylvania Court of Common Pleas of Philadelphia County, in accordance with 28 U.S.C. § 1446(d). See Exhibits "D" and "E", respectively.

10.     Defendants do not waive any defenses available under Pennsylvania law by filing this removal.

#11746935v1

Respectfully submitted,

**DEASEY, MAHONEY & VALENTINI, LTD.**

By: _____

Lauren M. Steins, Esquire
Pennsylvania Attorney Identification No. 314105
1601 Market Street, Suite 3400
Philadelphia, PA 19103
Phone: (215) 587-9400
Fax:    (215) 5879456
Email: lsteins@dmvlawfirm.com

Attorney for Defendants
Urban Affairs Coalition, Philadelphia Anti-Drug
Anti-Violence Network, and George Mosee, Jr.

Date: 4/3/2024

#11746935v1

## Certificate of Service

I, Lauren M. Steins, Esquire, hereby certify that, on the date set forth below, I did cause a true and correct copy of the foregoing Notice of Removal to be served on the following individual via email:

**Counsel for Plaintiff, Marcel Boddie**
Benjamin C. Hoffman, Esquire
Clearfield & Kofsky
One Penn Center at Suburban Station
1617 JFK Boulevard, Suite 355
Philadelphia, PA  19103

**Counsel for Co-Defendants, 29th HHS, Inc.,**
**Henny Sports Bar, Davuth Eng and Lyly Sok**
John J. McCreesh, IV., Esquire
McCreesh Law Office
7053 Terminal Square
Upper Darby, PA  19082

**Counsel for Co-Defendants, City of Philadelphia,**
**Erica Atwood, and Shondell Revell**
Adam R. Zurbriggen Esquire
Deputy City Solicitor
City of Philadelphia Law Department
1515 Arch Street, 14th Floor
Philadelphia, PA  19102

_____
Lauren M. Steins, Esquire

Date: 4/3/2024

#11746935v1

# EXHIBIT A

THIS IS A MAJOR JURY MATTER.
ASSESSMENT OF DAMAGES HEARING
IS REQUIRED.

*Filed and Attested by the
Office of Judicial Records
04 MAR 2024 10:45 am
C. SMITH*

**CLEARFIELD & KOFSKY**
By: Benjamin C. Hoffman, Esquire
Identification No. 311628
One Penn Center at Suburban Station
1617 JFK Boulevard, Suite 355
Philadelphia, PA  19103
(215) 563-6333

Attorney for Plaintiff

| | |
|---|---|
| **MARCEL BODDIE** | : |
| 2816 N. 21st Street | : |
| Philadelphia, PA 19132 | : |
| v. | : |
| **HENNYS SPORTS BAR** | : |
| 2748 N. 29th Street | : |
| Philadelphia, PA 19131 | : |
| And | : |
| **ANTONIO JARDINE a/k/a MARK COOPER** | : |
| Individually and in his official capacity | : |
| 1827 S. Taylor Street | : |
| Philadelphia, PA 19145 | : |
| and | : |
| **29TH HHS INC** | : |
| 2748 N. 29th Street | : |
| Philadelphia, PA 19132 | : |
| Continued on next page | |

**COURT OF COMMON PLEAS
PHILADELPHIA COUNTY**

**MARCH TERM 2024**

**NO.**

## COMPLAINT IN CIVIL ACTION
### (Code #2O-Other Personal Injury)

NOTICE

"You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint of for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

    "YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

PHILADELPHIA BAR ASSOCIATION
LAWYER REFERRAL & INFORMATION SERVICE
One Reading Center
Philadelphia, PA  19107
(215) 238-1701

AVISO

"Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las páginas siguientes, usted tiene veinte (20) días de plazo al partir de la fecha de la demanda y la notificación. Hace falta asentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomará medidas y puede continuar la demanda en contra suya sin previo aviso o notificación. Además, la corte puede decidir a favor del demandante y requiere que usted compla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

    "LLEVE ESTA DEMANDA A UN ABOGADO INMEDIATAMENTE. SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO, VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.

ASOCIACION DE LICENDIADOS DE FILADELFIA
SERVICIO DE REFERENCIA E INFORMACION LEGAL
One Reading Center
Filadelfia, Penna. 19107
(215) 238-1701

PHILADELPHIA ANTI-DRUG       :
ANTI-VIOLENCE NETWORK     :
2700 N. 17th Street-Suite 200   :
Philadelphia, PA 19104       :
     And                    :
GEORGE MOSEE, JR.        :
Individually and in his Official Capacity :
C/O PHILADELPHIA ANTI-DRUG  :
ANTI-VIOLENCE NETWORK     :
2700 N. 17th Street-Suite 200   :
Philadelphia, PA 19104       :
     And                    :
ERICA ATWOOD          :
Individually and in her Official Capacity :
C/O CITY OF PHILADELPHIA   :
City Solicitor's Office         :
1515 Arch Street, 14th Floor    :
Philadelphia, PA 19103       :
     And                    :
SHONDELL REVELL        :
Individually and in his Official Capacity :
C/O CITY OF PHILADELPHIA   :
City Solicitor's Office         :
1515 Arch Street, 14th Floor    :
Philadelphia, PA 19103       :
     And                    :
CITY OF PHILADELPHIA     :
City Solicitor's Office         :
1515 Arch Street, 14th Floor    :
Philadelphia, PA 19103       :
     And                    :
LYLY SOK                :
108 N. Drexel Avenue       :
Havertown, PA 19083      :
     And                    :
DAVUTH ENG            :
108 N. Drexel Avenue       :
Havertown, PA 19083      :
     And                    :
URBAN AFFAIRS COALITION  :
1650 Arch Street           :
Philadelphia, PA 19103       :
     And                    :
JOHN DOE SECURITY COMPANY :
     And                    :
JOHN DOE CONTRACTOR    :

-2-

Case ID: 240300240

## GENERAL AVERMENTS

1. Plaintiff, Marcel Boddie, is an adult individual who resides at the above-captioned address.

2. Defendant, Hennys Sports Bar, is a business, company, entity, partnership, franchise, fictitious name, proprietorship or corporation licensed and authorized to conduct and transact business within the Commonwealth of Pennsylvania, with an office for service at the above-captioned address.

3. Defendant, 29th HHS Inc (hereinafter referred to as "HHS Inc"), is a business, company, entity, partnership, franchise, fictitious name, proprietorship or corporation licensed and authorized to conduct and transact business within the Commonwealth of Pennsylvania, with an office for service at the above-captioned address.

4. Defendant, Antonio Jardine, is an adult individual who resides at the above-captioned address.

5. At all times relevant hereto, Jardine was acting in his official capacity as a Community Crisis Intervention Program ("CCIP") Advocate.

6. Defendant, Philadelphia Anti-Drug/Anti- Violence Network (hereinafter referred to as "PAAN"), is a business, company, entity, partnership, franchise, fictitious name, proprietorship or corporation licensed and authorized to conduct and transact business within the Commonwealth of Pennsylvania, with an office for service at the above-captioned address.

7. Defendant, George Mosee is an adult individual with an address for service as listed above.

8. At all relevant times, Mosee was acting in his official capacity as Executive Director of PAAN and/or Executive Director of Urban Affairs Coalition, and had direct responsibility for the CCIP.

Case ID: 240300240

9. Defendant, Erica Atwood is an adult individual with an address for service as listed above.

10. At all relevant times, Atwood was acting in her official capacity as senior director for the City of Philadelphia's Office of Policy and Strategic Initiatives for Criminal Justice, and had direct responsibility for oversight, establishing policies and procedures, staffing and funding the CCIP.

11. Defendant, Shondell Revell is an adult individual with an address for service as listed above.

12. At all relevant times, Revell was acting in his official capacity as director for the City of Philadelphia's Office of Violence Prevention, and had direct responsibility for oversight, establishing policies and procedures, staffing and funding the CCIP.

13. Defendant, City of Philadelphia ("City") is a municipality in the Commonwealth of Pennsylvania and is officially responsible, through its employees and agents, for the policies, practices and customs of the CCIP, with a principal place of business at City Hall, c/o City Solicitor's Office, 1600 Arch Street, Philadelphia, PA 19103.

14. Defendant, Urban Affairs Coalition (hereinafter referred to as "UAC"), is a business, company, entity, partnership, franchise, fictitious name, proprietorship or corporation licensed and authorized to conduct and transact business within the Commonwealth of Pennsylvania, with an office for service at the above-captioned address.

15. Defendant, Lyly Sok, is an adult individual who resides at the above-captioned address.

16. Defendant, Davuth Eng, is an adult individual who resides at the above-captioned address.

-4-

17. Defendant, John Doe Security Company is an, as yet, unidentified company that, upon due diligence and research, has only been identified as "eye 2 security" with no known address, place of business or officer(s).

18. Defendant, John Doe Contractor, a fictitious designation, is currently an unknown party.

19. Upon information and belief Defendant, John Doe Contractor, is that of third party company contracted to manage and/or oversee the CCIP.

20. The identity of Defendant, John Doe Contractor, is unknown after a reasonable search with due diligence.

21. At all times material hereto, Defendants acted or failed to act by and through their agents, servants, and/or employees who were then and there acting within the scope of their authority, within the course of their employment with Defendants, and furtherance of defendants' business and on behalf of Defendants.

22.     At all times material hereto, Defendants, Hennys Sports Bar and/or HHS Inc. did own and/or operate, and/or manage and/or control and/or possess the facility known as Hennys Sports Bar located at 2478 N. 29th Street, Philadelphia, Pennsylvania (hereinafter referred to as "premises").

23.     At all times material hereto, Defendant, Antonio Jardine was an employee and/or agent of Defendant, PAAN and/or Defendant City and/or Defendant UAC and was acting in the scope and course of his employment pursuant to the statutes, ordinances, customs, regulations and policies set forth by the City of Philadelphia.

24.     At all times material hereto, Defendant, Jardine was on duty for Defendant PAAN and/or Defendant City and/or Defendant UAC and acting under color of law and in his official capacity while at Hennys Sports Bar.

-5-

Case ID: 240300240

25.     At all times material hereto, Defendants, Lyly Sok and Davuth Eng did own and/or operate, and/or manage and/or control and/or possess the premises located at 2478 N. 29th Street, Philadelphia, Pennsylvania.

26.     At all times material hereto, Defendants, did own and/or operate, and/or manage and/or control and/or possess the premises and was responsible for the security of the premises and business invitees of Hennys Sports Bar located at 2478 N. 29th Street Philadelphia, Pennsylvania.

27.     At all times material hereto, Defendant John Doe Security Company, did operate and/or manage and/or control and/or were responsible for the hiring and implementation of security and/or hired to perform security at Hennys Sports Bar located at 2478 N. 29th Street, Philadelphia, Pennsylvania.

## ESTABLISHMENT AND OPERATION OF CCIP

28. On or about July 2018, the City of Philadelphia established the Community Crisis Intervention Program ("CCIP").

29.     CCIP is funded by the City of Philadelphia and overseen by the Office of Violence Prevention, Shondell Revell, Office of Policy and Strategic Initiatives for Criminal Justice, and/or Erica Atwood.

30. CCIP aims to reduce violence in the City by employing individuals with prior criminal convictions, including violent offenders, to patrol City streets and prevent violent crimes.

31. The City labels these individuals as "violence interrupters," "credible messengers," and "returning citizens."

32. The City, through the aforementioned Offices and under the supervision of Revell and Atwood, contracted with PAAN and/or UAC to manage its CCIP initiative.

-6-

33. Prior to accepting his City appointment, Revell served as a senior manager at PAAN.

34. In 2021 and 2022, PAAN and/or UAC received over $5 million in City funding for its management of the CCIP program, increasing to over $6 million in 2023.

35. At all times, the City, through the aforementioned offices and individuals, maintained control of all aspects of CCIP including, hiring policies (specifically the policy to hire former convicted felons as its CCIP advocates), training, supervision, customs, policies, funding and coordination with City offices and agencies.

36. The City provided CCIP advocates and other staff with access to equipment, information and personnel beyond that which is accessible to ordinary citizens.

37. The City facilitated coordination between CCIP and the Philadelphia Police Department (PPD) in furtherance of its objective of reducing violent crime.

38. PPD and the City of Philadelphia, at all relevant times, directed and/or controlled the activities, placement and location of CCIP advocates through its "Operation PinPoint" initiative and through daily shooting reports supplied by police through the Office of Violence Prevention.

39. On the evening in question, Defendant Jardine was in or around the subject premises at the direction of Defendants City, PAAN and/or UAC.

40. At all relevant times, PAAN and/or UAC was required to submit weekly activity reports to the City of Philadelphia Office of Violence Prevention.

41. At all relevant times, the City Office of Violence Prevention conducted regular visits to PAAN for purposes of providing oversight on the CCIP program.

## THE SYSTEMIC FAILURES OF CITY, PAAN, UAC AND CCIP

42. In August 2022, the American Institutes for Research released a report (the "Report"), commissioned by the City, detailing the failures of the City and PAAN in their administration, management, oversight and operation of CCIP.  See Phase I. Evaluability Assessment and

Process Evaluation of the Community Crisis Intervention Program, attached hereto as "**Exhibit A.**"

43. The Report was based on data gathered during the time frame relevant to the instant action.

44. The Report identified the following failures on the part of the aforementioned agencies:

      a.   CCIP staff were not all "on the same page"

      b.   There was no program director for CCIP

      c.   CCIP Advocates are left to determine their own approach to how they conduct their job responsibilities.

      d.   CCIP Advocates did not receive training, or received inadequate training in areas including violence prevention, crisis intervention, and violence interruption

      e.   PAAN and the City did not provide their "returning citizen" CCIP Advocates with adequate support to perform their job duties.

      f.   CCIP Advocates lack the skills and temperament needed to successfully perform certain job functions. See Id.

## THE SHOOTING OF MARCEL BODDIE

45. On or about the evening of April 30, 2022, Plaintiff, Marcel Boddie, was a business invitee at Henny's Sports Bar.

46. On that same evening, Antonio Jardine was on duty as a CCIP Advocate, patrolling the streets of Philadelphia for the purpose of furthering the City's interest of "violence interruption."

-8-

47. During his shift, while wearing his PAAN provided attire and driving his PAAN/City provided vehicle, Jardine drove to Henny's Sports Bar, armed with a firearm.

48. While at Henny's Sports Bar, Jardine was involved in a verbal altercation with another individual in an outdoor patio area of the bar.

49. During the altercation, Plaintiff, Marcel Boddie, attempted to de-escalate the confrontation.

50. At all times relevant, Defendants Henny's, 29th HHS Inc, Sok and Eng knew or should have known of the need to have adequate security personnel at Henny's Sports Bar.

51. At all times relevant, Defendants Henny's, 29th HHS Inc, Sok and Eng contracted with a security company known only as "eye 2 security" to provide security at the subject premises.

52. At no time did anyone from Henny's, 29th HHS Inc, or Eye 2 security intervene, mediate or otherwise attempt to diffuse the incident that is subject to this litigation.

53. At no time did anyone from Henny's, 29th HHS Inc, or Eye 2 security check its patrons for weapons prior to allowing entry onto the premises.

54. During the course of the conflict both Jardine and the other individual brandished their firearms.

55. Suddenly, and without warning, Jardine grabbed Boddie and pulled Boddie in front of him, while at the same time, reaching his other arm around Boddie and firing his firearm at the other individual.

56. The other individual returned fire while Jardine was holding Boddie in front of his body, using him as a human shield during the gunfight.

57. As a direct result of this incident, Plaintiff, Marcel Boddie, has suffered injuries including, but not limited to:  gun shot wounds resulting in comminuted fractures of the radial

Case ID: 240300240

head, radial diaphysis, and distal ulnar diaphysis, requiring surgical repair resulting in skin discoloration and permanent scarring, nerve damage, musculoskeletal injuries, as well as other injuries as may be diagnosed by Plaintiff's health care providers, all of which injuries have in the past, and may in the future, cause Plaintiff great pain and suffering.

## AFTERMATH OF THE SHOOTING

58. After the shooting, several other CCIP community activists appeared at the scene of the shooting.

59. The other CCIP activists refused to cooperate with police investigation, at times knowingly lying to the police about the identity of Jardine.

60. In response to this incident several CCIP activists were terminated as it was determined that they still adhered to the "code of the streets."

61. PAAN, through its Executive Director, George Mosee, Jr., reported to the City regarding CCIP's involvement in this shooting.

62. As a result of the shooting, and of the Report, the City prioritized hiring additional CCIP staff and increasing its oversight of CCIP.

## COUNT I: 42 U.S.C. §1983 STATE CREATED DANGER, AGAINST DEFENDANT, ANTONIO JARDINE (individual and in his official capacity), CITY, PAAN, UAC, ERICA ATWOOD (individual and in her official capacity), SHONDELL REVELL (individual and in his official capacity), and GEORGE MOSEE, JR. (individual and in his official capacity)

63.    Plaintiff incorporates each allegation set forth above as though fully set forth herein.

64. Defendants' constitutional torts are not governed or limited in any way by 42 Pa.C.S. § 8541, *et seq.* or 42 Pa.C.S. § 8521, *et seq.*

65. At all times material hereto, Defendants acted under color of state law.

-10-

Case ID: 240300240

66. Defendant Jardine's conduct on the evening in question was wrongful, malicious, reckless and/or intentional in depriving Plaintiff of his constitutional rights.

67. Throughout its creation, implementation and oversight of the CCIP the City knowingly solicited violent criminals and placed them in positions of actual and/or apparent authority in known at-risk and/or violent neighborhoods.

68. Defendants' actions through its creation, implementation and oversight of the CCIP created a foreseeable danger to individuals in the same position as Plaintiff.

69. Defendants' actions of placing known violent criminals in the City's most dangerous neighborhoods, giving them positions of authority, providing little to no training and tasking them with "violence interruption," shocks the conscience.

70. Defendants' actions, errors and omissions, as described herein, constituted violations of Plaintiffs' rights, privileges and immunities, as secured by the Fourth and Fourteenth Amendments to the United States Constitution, including, without limitation, the right to life, liberty and bodily integrity.

71. The acts of Defendants amounted to deliberate indifference to the rights of Plaintiffs and of any similarly situated person secured by the Fourth and Fourteenth Amendments to the United States Constitution.

72. Defendants' actions, and violation of Plaintiffs' rights, privileges and immunities, as secured by the Fourth and Fourteenth Amendments to the United States Constitution, as described herein, were the proximate cause of Plaintiffs' injuries.

**WHEREFORE**, Plaintiff, Marcel Boddie, demands judgment against the Defendants, jointly and/or severally for damages, in an amount in excess of the arbitration limits, plus interest and costs.

-11-

**COUNT II: *MONELL* – MUNICIPAL LIABILITY,**
**AGAINST DEFENDANT, CITY, PAAN, UAC, ERICA ATWOOD (in her official**
**capacity), SHONDELL REVELL (in his official capacity),  and GEORGE MOSEE, JR. (in**
**his official capacity)**

73.   Plaintiff, Marcel Boddie, incorporates by reference hereto, all of the allegations contained in the General Averments, as if they were set forth at length herein.

74.   Defendant, City of Philadelphia, is a municipal entity that is subject to suit pursuant to 42 U.S.C. § 1983.

75.   Defendant, City of Philadelphia's constitutional torts are not governed or limited in any way by 42 Pa.C.S. § 8541, et seq. or 42 Pa.C.S. § 8521, et seq.

76.   The conduct described in this Complaint and the training and oversight failures regarding the CCIP demonstrate that the City of Philadelphia failed to properly train CCIP Advocates in community re-entry, conflict resolution and de-escalation, mediation as well as other necessary training surrounding their placement in neighborhoods known to be at-risk for violent crime, which was a moving force in the deprivation of Plaintiff's constitutional rights.

77. The conduct described in this Complaint and the training and oversight failures regarding the CCIP demonstrate that the City of Philadelphia failed to train, oversee and/or discipline CCIP advocates and, in so doing, created, promoted and/or tacitly approved a culture and practice of vigilante community policing which was a moving force in the deprivation of Plaintiff's constitutional rights.

78. Defendants' actions, errors and omissions, as described herein, constituted violations of Plaintiffs' rights, privileges and immunities, as secured by the Fourth and Fourteenth Amendments to the United States Constitution, including, without limitation, the right to life, liberty and bodily integrity.

Case ID: 240300240

79. The acts of Defendants amounted to deliberate indifference to the rights of Plaintiffs and of any similarly situated person secured by the Fourth and Fourteenth Amendments to the United States Constitution.

80. Defendants' actions, and violation of Plaintiffs' rights, privileges and immunities, as secured by the Fourth and Fourteenth Amendments to the United States Constitution, as described herein, were the proximate cause of Plaintiffs' injuries.

## COUNT III:
## PLAINTIFF, MARCEL BODDIE v. DEFENDANTS, HENNYS SPORTS BAR, HHS INC., LYLY SOK, DAVUTH ENG and JOHN DOE SECURITY COMPANY NEGLIGENCE

81. Plaintiff, Marcel Boddie, incorporates by reference hereto, all of the allegations contained in the General Averments, Count I and Count II as if they were set forth at length herein.

82. The negligence and carelessness of the Defendants, acting as aforesaid, consisted of the following:

    a.  allowing and/or causing a dangerous and defective condition to exist of Defendants' premises which they knew or should have known by the exercise of reasonable care;

    b.  said dangerous condition created a reasonably foreseeable risk of the kind of injuries which Plaintiff sustained;

    c.  failing to correct said dangerous condition of which they knew or should have known and which constituted a danger to persons lawfully inside;

    d.  failing to warn persons of the existence of said dangerous condition of which Defendants knew or should have known;

    e.  failing to hire a competent security company and/or security personnel;

Case ID: 240300240

f.  failing to  hire competent a security company and/or security personnel to patrol the premises at reasonable intervals;

g.  failing to install security cameras or other surveillance devices on the premises;

h.  permitting a highly dangerous condition to exist for an unreasonable time;

i.  allowing known violent activity to occur without notifying local police and/or sheriffs;

j.  disregarding the rights and safety of the plaintiff;

k.  failing to exercise due care under the circumstances;

l.  negligence per se; and

m.  in being otherwise careless, reckless and negligent, the particulars of which are presently unknown to plaintiff, but which may be learned by discovery procedures provided by the Pennsylvania Rules of Civil Procedure, or which may be learned at the trial of this case.

83.  As a direct result of this incident, Plaintiff, Marcel Boddie, has suffered injuries, including, but not limited to:  gun shot wounds resulting in comminuted fractures of the radial head, radial diaphysis, and distal ulnar diaphysis, requiring surgical repair resulting in skin discoloration and permanent scarring, nerve damage, musculoskeletal injuries, as well as other injuries as may be diagnosed by Plaintiff's health care providers, all of which injuries have in the past, and may in the future, cause Plaintiff great pain and suffering.

84.  As a further result of this incident, Plaintiff, Marcel Boddie, has been or will be required to receive and undergo medical attention and care and to expend various sums of money and to incur various expenses, and may be required to continue to expend such sums or incur such expenditures for an indefinite time in the future.

85.     As a further result of this incident, Plaintiff, Marcel Boddie, has suffered medically determinable physical and/or mental impairment, which that prevents the Plaintiff from performing all or substantially all of the material acts and duties that constituted the Plaintiff's usual and customary activities prior to the incident.

86.     As a direct and reasonable result of the incident aforementioned, Plaintiff, Marcel Boddie, has or may hereafter incur other financial expenses, which do or may exceed amounts, which Plaintiff may otherwise be entitled to recover.

87.     As a further result of the incident aforementioned, Plaintiff, Marcel Boddie, has suffered severe physical pain, mental anguish and humiliation, and may continue to suffer same for an indefinite time in the future.

**WHEREFORE,** Plaintiff, Marcel Boddie, demands judgment against the Defendants, jointly and/or severally for damages, in an amount in excess of the arbitration limits, plus interest and costs.

**COUNT IV**
**PLAINTIFF, MARCEL BODDIE v. AGAINST DEFENDANT, ANTONIO JARDINE (individual and in his official capacity), CITY, PAAN, UAC, ERICA ATWOOD (individual and in her official capacity),, SHONDELL REVELL (individual and in his official capacity),  and GEORGE MOSEE, JR. (individual and in his official capacity)**
**NEGLIGENCE**

88.     Plaintiff, Marcel Boddie, incorporates by reference hereto, all of the allegations contained in the General Averments and Counts I, II and III as if they were set forth at length herein.

89.     The negligence and carelessness of the Defendants, acting as aforesaid, consisted of the following:

a.   Hiring individuals known to pose a danger to the general public;

b.   failing to have reasonable hiring measures in place;

-15-

c.   failing perform background checks on employees;

d.   allowing employees with known criminal history to carry a firearm;

e.   providing a firearm to employees with known criminal history and/or violent propensities;

f.   negligent hiring practices;

g.   failing to uphold its duty to the general public;

h.   failing to properly train employees in conflict de-escalation;

i.   disregarding the rights and safety of the Plaintiff;

j.   negligence per se; and

k.   in being otherwise careless, reckless and negligent, the particulars of which are presently unknown to plaintiff, but which may be learned by discovery procedures provided by the Pennsylvania Rules of Civil Procedure, or which may be learned at the trial of this case.

90.      As a direct result of this incident, Plaintiff, Marcel Boddie, has suffered injuries including, but not limited to: gun shot wounds resulting in comminuted fractures of the radial head, radial diaphysis, and distal ulnar diaphysis, requiring surgical repair resulting in skin discoloration and permanent scarring, nerve damage, musculoskeletal injuries, as well as other injuries as may be diagnosed by Plaintiff's health care providers, all of which injuries have in the past, and may in the future, cause Plaintiff great pain and suffering.

91.      As a further result of this incident, Plaintiff, Marcel Boddie, has been or will be required to receive and undergo medical attention and care and to expend various sums of money and to incur various expenses, and may be required to continue to expend such sums or incur such expenditures for an indefinite time in the future.

Case ID: 240300240

92.     As a further result of this incident, Plaintiff, Marcel Boddie, has suffered medically determinable physical and/or mental impairment, which that prevents the Plaintiff from performing all or substantially all of the material acts and duties that constituted the Plaintiff's usual and customary activities prior to the incident.

93.     As a direct and reasonable result of the incident aforementioned, Plaintiff, Marcel Boddie, has or may hereafter incur other financial expenses, which do or may exceed amounts, which Plaintiff may otherwise be entitled to recover.

94.     As a further result of the incident aforementioned, Plaintiff, Marcel Boddie, has suffered severe physical pain, mental anguish and humiliation, and may continue to suffer same for an indefinite time in the future.

**WHEREFORE,** Plaintiff, Marcel Boddie, demands judgment against the Defendants, jointly and/or severally for damages, in an amount in excess of the arbitration limits, plus interest and costs.

## COUNT V
## PLAINTIFF, MARCEL BODDIE v. DEFENDANT, ANTONIO JARDINE
## ASSAULT and BATTERY

95.     Plaintiff, Marcel Boddie, incorporates by reference hereto, all of the allegations contained in the General Averments and Counts I, II, III and IV as if they were set forth at length herein.

96.     On April 30, 2022, Defendant, Antonio Jardine, violently shot the Plaintiff's upper body causing the injuries set forth below.

97.     As a result of this incident Plaintiff, Marcel Boddie, has suffered gun shot wounds resulting in comminuted fractures of the radial head, radial diaphysis, and distal ulnar diaphysis, requiring surgical repair resulting in skin discoloration and permanent

Case ID: 240300240

scarring, nerve damage, musculoskeletal injuries, as well as other injuries as may be diagnosed by Plaintiff's health care providers, all of which injuries have in the past, and may in the future, cause Plaintiff great pain and suffering.

98. As a further result of this accident, Plaintiff, Marcel Boddie, has been or will be required to receive and undergo medical attention and care and to expend various sums of money and to incur various expenses, and may be required to continue to expend such sums or incur such expenditures for an indefinite time in the future.

99. As a further result of this accident, Plaintiff, Marcel Boddie, has or may hereafter suffer a severe loss of earnings and impairment of earning power and capacity.

100. As a further result of this accident, Plaintiff, Marcel Boddie, has suffered medically determinable physical and/or mental impairment, which prevents the Plaintiff from performing all or substantially all of the material acts and duties that constituted the Plaintiff's usual and customary activities prior to the accident.

101. As a direct and reasonable result of the aforementioned accident, Plaintiff, Marcel Boddie, has or may hereafter incur other financial expenses, which do or may exceed amounts that Plaintiff may otherwise be entitled to recover.

102. As a further result of the aforementioned accident, Plaintiff, Marcel Boddie has suffered severe physical pain, mental anguish and humiliation, and may continue to suffer same for an indefinite time in the future.

**WHEREFORE,** Plaintiff, Marcel Boddie, demands judgment against the Defendants, jointly and/or severally, for damages, in an amount in excess of the arbitration limits, plus interest and costs.

## COUNT VI
## PLAINTIFF, MARCEL BODDIE v. DEFENDANT, JOHN DOE CONTRACTOR, ONLY NEGLIGENCE

Case ID: 240300240

103.   Plaintiff, Marcel Boddie, incorporates by reference hereto, all of the allegations contained in the General Averments and Counts I through V, as if they were set forth at length herein.

104.   It is alleged that Defendant John Doe Contractor is a company responsible for the oversight, management, training and operations of CCIP.

105.   Plaintiff, through the exercise of due diligence, has not determined the identity of this company.

106.   Plaintiff alleges this company failed to properly train, oversee and/or manage CCIP advocates which failures led to the harm suffered by Plaintiff.

107.   As a direct result of this incident, Plaintiff, Marcel Boddie, has suffered injuries, including, but not limited to:  gun shot wounds resulting in comminuted fractures of the radial head, radial diaphysis, and distal ulnar diaphysis, requiring surgical repair resulting in skin discoloration and permanent scarring, nerve damage, musculoskeletal injuries, as well as other injuries as may be diagnosed by Plaintiff's health care providers, all of which injuries have in the past, and may in the future, cause Plaintiff great pain and suffering.

108.   As a further result of this incident, Plaintiff, Marcel Boddie, has been or will be required to receive and undergo medical attention and care and to expend various sums of money and to incur various expenses, and may be required to continue to expend such sums or incur such expenditures for an indefinite time in the future.

109.   As a further result of this incident, Plaintiff, Marcel Boddie, has suffered medically determinable physical and/or mental impairment, which that prevents the

Case ID: 240300240

Plaintiff from performing all or substantially all of the material acts and duties that constituted the Plaintiff's usual and customary activities prior to the incident.

110.    As a direct and reasonable result of the incident aforementioned, Plaintiff, Marcel Boddie, has or may hereafter incur other financial expenses, which do or may exceed amounts, which Plaintiff may otherwise be entitled to recover.

111.    As a further result of the incident aforementioned, Plaintiff, Marcel Boddie, has suffered severe physical pain, mental anguish and humiliation, and may continue to suffer same for an indefinite time in the future.

**WHEREFORE,** Plaintiff, Marcel Boddie, demands judgment against the Defendants, jointly and/or severally for damages, in an amount in excess of the arbitration limits, plus interest and costs.

## COUNT VII
## PLAINTIFF, MARCEL BODDIE v. DEFENDANT, JOHN DOE SECURITY COMPANY, NEGLIGENCE

112.    Plaintiff, Marcel Boddie, incorporates by reference hereto, all of the allegations contained in the General Averments and Counts I through VI, as if they were set forth at length herein.

113.    The negligence and carelessness of the Defendant, acting as aforesaid, consisted of the following:

    a.    failing to warn persons of the existence of said dangerous condition of which Defendants knew or should have known;

    b.    failing to hire competent security personnel;

    c.    failing to  patrol the premises at reasonable intervals;

Case ID: 240300240

d.  failing to install security cameras or other surveillance devices on the premises;

e.  failing to have an adequate number of employees and/or security personnel to perform proper security of the premises;

f.  allowing the aforementioned premises to be left unsupervised or improperly supervised;

g.  failing to adhere to all aspects of the work/security contract;

h.  failing to continue security services after the need for same was apparent;

i.  failing to inspect the premises at reasonable intervals in order to determine whether security was being provided adequately;

j.  disregarding the rights and safety of the plaintiff;

k.  failing to exercise due care under the circumstances;

l.  negligence per se; and

m.  in being otherwise careless, reckless and negligent, the particulars of which are presently unknown to plaintiff, but which may be learned by discovery procedures provided by the Pennsylvania Rules of Civil Procedure, or which may be learned at the trial of this case.

114.    As a direct result of this incident, Plaintiff, Marcel Boddie, has suffered injuries including, but not limited to: gun shot wounds resulting in comminuted fractures of the radial head, radial diaphysis, and distal ulnar diaphysis, requiring surgical repair resulting in skin discoloration and permanent scarring, nerve damage, musculoskeletal injuries, as well as other injuries as may be diagnosed by Plaintiff's health care providers, all of which injuries have in the past, and may in the future, cause Plaintiff great pain and suffering.

Case ID: 240300240

115.    As a further result of this incident, Plaintiff, Marcel Boddie, has been or will be required to receive and undergo medical attention and care and to expend various sums of money and to incur various expenses, and may be required to continue to expend such sums or incur such expenditures for an indefinite time in the future.

116.    As a further result of this incident, Plaintiff, Marcel Boddie, has suffered medically determinable physical and/or mental impairment, which that prevents the Plaintiff from performing all or substantially all of the material acts and duties that constituted the Plaintiff's usual and customary activities prior to the incident.

117.    As a direct and reasonable result of the incident aforementioned, Plaintiff, Marcel Boddie, has or may hereafter incur other financial expenses, which do or may exceed amounts, which Plaintiff may otherwise be entitled to recover.

118.    As a further result of the incident aforementioned, Plaintiff, Marcel Boddie, has suffered severe physical pain, mental anguish and humiliation, and may continue to suffer same for an indefinite time in the future.

**WHEREFORE,** Plaintiff, Marcel Boddie, demands judgment against the Defendants, jointly and/or severally for damages, in an amount in excess of the arbitration limits, plus interest and costs.

**CLEARFIELD & KOFSKY**

BY:    _____
**BENJAMIN C. HOFFMAN, ESQUIRE**
**Attorney for Plaintiff, Marcel Boddie**

Case ID: 240300240

# EXHIBIT "A"

Case ID: 240300240

# Phase I. Evaluability Assessment and Process Evaluation of the Community Crisis Intervention Program

Submitted to:

Managing Director's Office
*City of Philadelphia*

Tumar Alexander, Managing Director

Erica Atwood, Senior Director
Office of Policy and Strategic Initiatives for
Criminal Justice and Public Safety

Shondell Revell, Director
Office of Violence Prevention

**AUGUST 2022**

Submitted by:

*American Institutes for Research*

Patricia Campie, Ph.D.
Principal Researcher



**Advancing Evidence.
Improving Lives.**

American Institutes for Research®  |  AIR.ORG

Case ID: 240300240

## Acknowledgments

The author extends sincere appreciation to the many people who contributed valuable time in support of this evaluation—most notably CCIP staff, PAAN leadership and board members, the Philadelphia Police Department, and the Office of Violence Prevention.

# Table of Contents

Project Background ........................................................................................................... 1

    Phase 1 Objectives .................................................................................................. 2

    Phase II Objectives ................................................................................................. 2

Purpose of the Evaluability Assessment and Key Questions ........................................... 2

Data Collection Process ................................................................................................... 3

Evaluability Results ......................................................................................................... 5

Process Evaluation Results .............................................................................................. 8

Conclusion ..................................................................................................................... 12

Recommendations ......................................................................................................... 13

References ...................................................................................................................... 14

# Exhibits

Exhibit 1. Homicide Victims to Date Compared With Previous Years ............................................. 1

Exhibit 2. Questions Guiding the Four-Tiered Evaluability Assessment Framework ..................... 3

Exhibit 3. Data Collection Methods, Sources, and Description ..................................................... 4

Exhibit 4. Evaluability Results – Key Assets.................................................................................. 6

Exhibit 5. Evaluability Results – Key Challenges .......................................................................... 7

Exhibit 6. Cure Violence and CCIP Program Models ..................................................................... 8

Exhibit 7. Alignment Between CCIP Strategy and CCIP Practice.................................................... 9

Case ID: 240300240

# Project Background

Despite falling rates of violent crime in many American cities over recent years, Philadelphia has experienced the opposite trend, with the number of gun-related shootings and deaths rising since 2015. Nearly 500 individuals lost their lives to gun violence in the city in 2020, both a 40% increase from 2019 and the highest annual number of firearm homicides since 1990 (Philadelphia Police Department, n.d.). Through August 8, 2022, the city had already reported 337 homicides, a 4% increase from the number reported through the same date in 2021 and reflecting the recent and historically high number of shooting victims in Philadelphia as compared with the last decade of violence in the city (Exhibit 1).

**Exhibit 1. Homicide Victims to Date Compared With Previous Years**

| YEAR-TO-DATE | 2022 | 2021 | 2020 | 2019 | 2018 | 2017 | 2016 | 2015 | 2014 | 2013 | 2012 | 2011 | 2010 | 2009 | 2008 | 2007 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Aug 8, 2022 *as of 11:59 pm* | **337** 4% | 324 | 259 | 197 | 189 | 195 | 170 | 161 | 147 | 151 | 213 | 196 | 190 | 180 | 193 | 250 |

*Note.* From "Crime Maps & Stats," Philadelphia Police Department, n.d. Retrieved August 8, 2022, from https://www.phillypolice.com/crime-maps-stats/

Besides the human toll for victims and their families, gun violence in Philadelphia and elsewhere increases health care costs, decreases property values, and disrupts social services (World Health Organization, 2014). Recognizing the need to reverse the trend of increasing homicide and shooting rates, Philadelphia developed a strategic plan in 2018 to reduce gun violence, setting goals of reducing yearly homicides by 30% (from a baseline of 351 homicides in 2018) and shootings by 25% (from a baseline of 1,403 shootings in 2018) by the end of 2024. A key strategy in this plan is investment in the Community Crisis Intervention Program (CCIP), a strategy implemented by the Philadelphia Anti-Drug Anti-Violence Network (PAAN) which deploys credible messengers as outreach workers to combat violence by intervening where the violence is most prevalent. CCIP workers seek to foster meaningful relationships with citizens at the highest risk for violence, provide individuals involved in criminal activities with positive alternatives, and respond to neighborhood crises with mediation and resources.

The City of Philadelphia, through the Office of Violence Prevention (OVP), selected the American Institutes for Research (AIR) as the independent evaluator of CCIP. Evaluation results will help determine future scale-up plans for the program and support Philadelphia's strategic goal to reduce shootings and gun-related homicides in the city by 2024.

For the evaluation, AIR will complete the following objectives:

**Phase I Objectives**

> **Objective 1**: Complete an evaluability assessment of CCIP to determine which outcome/impact evaluation model may be best suited for the program.

> **Objective 2**: Conduct a process evaluation of CCIP to explore how the program is operated on the streets.

> **Objective 3**: If feasible, create an outcome/impact evaluation design for CIP based on findings of the evaluability assessment and process evaluation.

**Phase II Objectives**

> **Objective 4**: If feasible, conduct an outcome/impact evaluation of CCIP to explore how CCIP is affecting gun violence and inform the city's decisions on next steps for the program.

This document presents results from the evaluability assessment (Objective 1) and process evaluation (Objective 2), followed by recommendations for conducting an outcome/impact evaluation of CCIP (Objective 3).  A separate Outcome Evaluation Plan has been submitted to the OVP based on the recommendations in this report.

## Purpose of the Evaluability Assessment and Key Questions

The evaluability assessment provides information on whether or not PAAN and CCIP have the necessary capacity to participate in an outcome evaluation, and what outcome designs are most feasible given the intervention and organization's readiness for evaluation. Conducting an evaluability assessment in advance of an outcome study minimizes the risk of producing unreliable or limited results if the intervention is not ready for an outcome study, wasting precious financial resources in the process. In partnership with PAAN, and with insights from OVP, AIR developed an evaluability assessment process to help determine PAAN's and CCIP's readiness to participate in a formal evaluation, which types of research designs can be supported, and what technical assistance might be required to support PAAN through the research process given the organization's readiness level and OVP's goals and resources.

The evaluability assessment design used a four-tiered approach to determine PAAN's and CCIP's readiness for an outcome evaluation: (1) *needs assessment, (2) monitoring and accountability, (3) implementation,* and *(4) achieving outcomes* (Exhibit 2).

Case ID: 240300240

**Exhibit 2. Questions Guiding the Four-Tiered Evaluability Assessment Framework**

| Tiers | Evaluability Assessment Question |
|---|---|
| Tier 1:<br>Needs<br>Assessment | • Is there a clear understanding of the change or outcomes CCIP is trying to produce?<br>• Are there realistic and measurable goals and objectives tied to improving outcomes?<br>• What are the skill levels of staff? Are staff ready to use the program model?<br>• Are the right neighborhoods/individuals (risk levels) being targeted for CCIP support? |
| Tier 2:<br>Monitoring and<br>Accountability | • What is the capacity for collecting and managing evaluation data?<br>• How do PAAN and OVP monitor and support the collection of data?<br>• How are data shared with others to understand how CCIP is progressing and what outcomes are occurring? |
| Tier 3:<br>Implementation | • What processes are in place to monitor implementation quality and fidelity?<br>• What staff training is in place for the CCIP and/or Cure Violence models?<br>• Do staff have training in violence prevention best practices, supported by evidence? |
| Tier 4:<br>Achieving<br>Outcomes | • Have short-term and long-term goals from using CCIP been identified?<br>• What would indicate success reaching these goals?<br>• How are youth, family, and external stakeholders involved in identifying outcomes? |

## Data Collection Process

PAAN leadership met with AIR to discuss the best means for organizing data collection within the agency. OVP provided coordination support for AIR to meet with other city stakeholders, including the Philadelphia Police Department (PPD). Both OVP and PAAN provided access to key documents and materials relevant to the assessment. Data collection methods involved interviews and focus groups with PAAN and CCIP staff, PAAN board members, the Philadelphia Police Department, and individuals coordinating or evaluating other OVP-funded, complementary gun violence prevention initiatives in the city. Shift ride alongs involved the researchers joining CCIP day and night teams (separately) to observe a typical shift in the community. Administrative information for the ESRI's Survey123 app used by CCIP Advocates came from the Delaware Valley Intelligence Center (DVIC). Documents and materials on CCIP processes, PAAN policies, OVP requirements for CCIP, and Philadelphia Police practices related to CCIP's work were retrieved directly from PAAN and OVP and through public sources (e.g., websites, journal articles, reports). Most interviews were performed remotely by phone or Zoom conferencing, with some taking place in person at PAAN headquarters, and all information from these sessions was stored within a secure online database. Focus groups and observations were performed in person at PAAN offices or in PAAN vehicles. Interview questions were reviewed by OVP in advance, with feedback incorporated. In addition, the AIR Institutional Review Board (IRB) reviewed and approved all instruments and protocols before

CCIP Evaluability and Process Evaluation Results – NOT FOR PUBLIC DISSEMINATION

data collection began. An overview of data collection methods, sources, and timeline is shown in Exhibit 3.

**Exhibit 3. Data Collection Methods, Sources, and Description**

| Methods (#) | Sources | Descriptions |
|---|---|---|
| **App Review** | DVIC | Overview of ESRI's Survey123 mobile app used by CCIP Advocates to document field activities |
| **Document Review** | PAAN<br>OVP/MDO<br>PPD<br>Web-based research | Ten different monthly reports or service logs from PAAN and CCIP over a 12-month period (120 reports/service logs); Cure Violence training materials (11 documents, including attendance logs); CCIP professional development schedule and community engagement training; weekly service report examples; referral form examples; handouts used while canvassing; CCIP grant requirements and PAAN grant proposal for CCIP; PPD Operation PinPoint locations used to help CCIP target outreach areas; city strategic plan to reduce violence; past evaluations of violence prevention and reduction programs in the city, including the Youth Violence Reduction Program (YVRP) that preceded CCIP. |
| **Focus Group (3 groups; 29 people)** | CCIP Advocates | 90-minute sessions to explore:<br>• A "typical day/night" in the life of an Advocate—what CCIP looks like from their point of view<br>• The extent to which Advocates feel prepared to do the work that CCIP requires of them<br>• Organizational supports for the Advocates, including training, supervision, and self-care resources<br>• Barriers in implementing CCIP (within PAAN as well as within the community and with partners), ideas for improvement, and examples of current success |
| **Interviews (25)** | CCIP Senior Advocates<br><br>PAAN Program Directors<br><br>PAAN Executive Director<br><br>PAAN Operations Director<br><br>PAAN Executive Assistant and Fleet Manager<br><br>PAAN Board Members (3)<br><br>UAC Leadership (1) | Interview questions were tailored to each stakeholder's position relative to CCIP and organizational context and included the following topics:<br>• From your experience, what are the root causes behind the gun violence that CCIP tries to prevent?<br>• From your perspective, how does CCIP facilitate the prevention of gun violence? Do all Advocates use the same approach? Where does CCIP operate? What are CCIP's hours/days of operation?<br>• In your experience, what are the barriers that CCIP faces when trying to intervene to prevent gun violence?<br>• Is there a way for staff to share their ideas or feedback with management on how CCIP is working and ideas for improvement?<br>• How does CCIP keep track of daily program activities? Does CCIP collect information on individual people they help in the community or services received? What outcomes are measured? How are results used to review or improve program practices? |

| Methods (#) | Sources | Descriptions |
|---|---|---|
| | PPD Captains (8) <br> PPD Deputy Commissioner (1) <br> GVI Coordinator (OVP) <br> GVI Evaluator (UPenn) <br> VPP Coordinator (OVP) | • What kind of organizational support is available from PAAN to CCIP Advocates to help them perform their job duties? What kind of training does CCIP provide for its Advocates? How do staff receive feedback on their work? <br><br> • In your experience, in what ways are the local neighborhood or other community stakeholders involved in CCIP? Is CCIP well known as a program? Is PAAN well known as an organization? <br><br> • In your view, what does CCIP do to be seen as credible by those you are trying to reach with your program? <br><br> • In your view, in what ways does CCIP depend on program partners to achieve CCIP's goals? Are other organizations doing the same work as CCIP in the same areas? Is there follow-up by CCIP after making a referral to a partner organization? Is there a case management aspect to CCIP? <br><br> • In what ways does the relationship between CCIP and police work well, and where is the relationship difficult or counterproductive? <br><br> • What has been your experience trying to implement CCIP during the COVID-19 pandemic? <br><br> • From your perspective to what extent has CCIP been impacted by the increased attention to racial equity reform in policing practices? <br><br> • Is there anything else you want to share about your experience with CCIP? |
| **Shift Ride Along (2)** | Day Shift (Th. 1:30–3:30 pm) <br> Night Shift (Fri. 7:00–9:00 pm) | The shift ride alongs included 1) observations of house visits to follow up or make first contact with individuals who had a victimization connection to a recent shooting, 2) canvassing neighborhoods where a shooting had recently occurred to distribute literature on PAAN resources, and 3) conversations with the two-person advocate teams as they explained their process, how they work as a team, their history with CCIP, and examples of situations that exemplify the work they do. |

## Evaluability Results

The evaluability results are derived from an analysis of information collected from interviews, focus groups, ride alongs, administrative data, and documents; the results are aggregated and summarized according to evaluability readiness (Table 2). We also present detailed results for each evaluability assessment question within each of the five tiers, beginning with key assets that are strengths anchoring CCIP within the PAAN setting (Exhibit 4).

**Exhibit 4. Evaluability Results – Key Assets**

| Tier 1<br>Needs Assessment | Tier 2<br>Monitoring & Accountability | Tier 3<br>Implementation | Tier 4<br>Achieving Outcomes |
|---|---|---|---|
| **Key Evaluability Assets** | | | |

**Tier 1: Needs Assessment**
- There is an understanding among staff that preventing future gun violence is the ultimate goal of CCIP.
- Staff understand there are a variety of intermediate outcomes that impact CCIP's ability to prevent gun violence (e.g., employment stability, poverty, addressing trauma).
- CCIP employs management staff who have extensive experience in the program model and crisis intervention more generally, and most management and direct service staff (i.e., Advocates) are from, or very familiar with, the neighborhoods CCIP serves.

**Tier 2: Monitoring and Accountability**
- Management staff recognize the importance and necessity of collecting timely, accurate, and comprehensive information on CCIP activities and outcomes.
- There is a mobile application used by the Advocates to document the work they do in the community.
- Daily, shift coordinators conduct safety checks in the field, monitor the travel routes and locations of advocate teams using GPS tracking tools, and prepare weekly activity reports for submission to leadership.
- There are briefings convened before each shift to share information from the preceding shift(s), share location information on the most recent shootings (i.e., hit lists), and provide follow-up and status updates on pending issues, such as referrals and planning community events.
- PAAN submits weekly activity reports to OVP, and PAAN department heads submit monthly reports to the PAAN Executive Director for submission to funders who support PAAN's programming, including CCIP.
- OVP visits PAAN regularly to provide oversight from the city's perspective

**Tier 3: Implementation**
- New staff receive hands-on training in the field under the guidance of Senior Advocates.
- New staff receive operational supplies (e.g., uniform, phone, business cards) and a policy orientation (e.g., use of vehicles, office procedures) during their first week of employment.
- PAAN provides a variety of training to staff, including a session from the technical assistance arm of the Cure Violence organization from Chicago to share their model and experiences. PAAN has provided staff with access to experts in self-care strategies to deal with secondary trauma and potential burnout.
- Shift coordinators conduct daily safety checks in the field, monitor the travel routes and locations of advocate teams using GPS tracking tools, and prepare weekly activity reports.
- Referral forms are used to connect young people identified by Advocates with services offered by other PAAN departments (e.g., Human Services) or through partner agencies.
- CCIP Advocates are asked for ideas on planning events for particular communities, such as a coat drive, since the Advocates are best positioned to know what each community might need.
- The PAAN Executive Director has an open-door policy that allows staff to share feedback on CCIP.

**Tier 4: Achieving Outcomes**
- There are operational documents that identify a range of intermediate and long-term outcomes from CCIP. There is a desire and willingness to use data to measure outcomes and understand CCIP's effectiveness.

The evaluability assessment also revealed key challenges that limit the ability to accurately evaluate the effectiveness of CCIP (Exhibit 5).

**Exhibit 5. Evaluability Results – Key Challenges**

| Tier 1<br>Needs Assessment | Tier 2<br>Monitoring & Accountability | Tier 3<br>Implementation | Tier 4<br>Achieving Outcomes |
|---|---|---|---|
| **Key Evaluability Challenges** | | | |

**Tier 1: Needs Assessment**
- Staff are reportedly "not all on the same page" and may not have a clear understanding of CCIP's purpose.
- There seems to be a divide between generations of workers at PAAN or those with more or less recent experience with violence/justice involvement. This divide seems to affect the approach that different staff take to their work in the community and what they believe is needed to work effectively in the community.
- CCIP works in virtually every police district in the city, and the scope appears to be overwhelming and a bit unmanageable—especially given that CCIP is short of staff and many staff are new.
- Some staff expressed the belief that the mandate CCIP has to reduce violence is unrealistic.

**Tier 2: Monitoring and Accountability**
- There are a variety of methods for monitoring and documenting CCIP's activities, and some staff feel overwhelmed by the need to keep track of everything they do, while others feel disrespected by having to report on what they "know they already did."
- There is no program director for CCIP, so there is no single point of contact to manage the program, provide feedback or training to staff, or assess progress toward program goals or objectives.
- There is no indication that any of the information collected through the different monitoring tools and other forms is analyzed, shared back with staff, or used to recognize high performance, measure progress toward goals, or provide insights for needed program improvements.
- There is some tension between supervisory staff and those they manage, and between day and night shifts.

**Tier 3: Implementation**
- There is some sense from Advocates that the coordinators do not understand the work of the Advocates because they are not "on the street" and spend most of their time in the office.
- The Advocates appear to determine their own approach without any strict adherence to any "program model" or implementation plan determined in advance. They feel this discretion is important for their success.
- While staff reported on a variety of different types of trainings, very few of these involved training in violence prevention best practices, crisis intervention, or violence interruption.
- Some long-time PAAN staff lamented the lack of consistent and high-quality training offered to staff, and cited the lack of training, as well as poor supervision, as reasons why staff are not all "on the same page."
- Staff believe that CCIP is understaffed, and while employing returning citizens was seen as a positive practice in theory, it was felt that PAAN does not provide these staff with the support they need to perform.
- Staff lamented a lack of resources available for them to quickly provide resources to people they meet. Past financial accountability issues among previous staff were offered as a reason for "more bureaucracy", meaning rules that slow down access needed resources.
- Staff feel they are underpaid, with many describing taking additional jobs to make ends meet, despite working full time at CCIP.
- Many staff and external stakeholders expressed frustration at the lack of collaboration and coordination across the many groups in the city that provide resources to the communities where CCIP is working.
- There was some indication that PAAN staff do not have the adequate cultural diversity to address Latino, Asian, and White communities experiencing violence within the city.

 CCIP Evaluability and Process Evaluation Results – NOT FOR PUBLIC DISSEMINATION Case ID: 240300240

| Tier 1 Needs Assessment | Tier 2 Monitoring & Accountability | Tier 3 Implementation | Tier 4 Achieving Outcomes |
|---|---|---|---|
| **Key Evaluability Challenges** | | | |

**Tier 4: Achieving Outcomes**

- While staff are aware of canvassing quotas and referral counts they are expected to reach on a daily or weekly basis, there is no clear sense of short- and long-term goals for CCIP or staff performance.
- While program documents show clear expected outcomes, there is no consistency among staff and other CCIP partners in describing what success looks like, apart from a general belief/hope that what they are doing is making some sort of positive difference in preventing gun violence.
- No staff mentioned the *RoadMap to Safer Communities*, and only a few mentioned PPD's Operation PinPoint. The Group Violence Intervention program was mentioned by just one person as a program that was similar to CCIP. Staff indicated that "no one else in the city does the work that we do."
- Several staff brought up the Youth Violence Reduction Partnership (YVRP), which formerly ran through PAAN, and which had a case management component that CCIP lacks—a component that some staff thought would be useful in CCIP.

# Process Evaluation Results

**Implementation Practices :** CCIP is often compared with the Cure Violence gun violence intervention because both approaches use "credible messengers" to engage individuals who live in areas impacted by high rates of gun violence with messages of hope and help. However, where Cure Violence uses a narrower approach that focuses on direct intervention with the individuals who are committing violence, CCIP uses a broader approach that focuses on changing community norms, while working with individuals who are victims, bystanders, or those at risk for or involved in violent conflicts (Exhibit 6).

**Exhibit 6. Cure Violence and CCIP Program Models**



**Cure Violence Theory of Change**        **CCIP Theory of Change**

*Note.* From CCIP strategy document submitted by PAAN to OVP, June 2021.

CCIP's stated program model includes five key tasks. Data collected through the process evaluation indicate that tasks vary by team and by shift, and some tasks do not appear to be common in practice (Exhibit 7). Text is colored (black, blue, and red) to align CCIP strategies in theory with CCIP practices, as made evident through the evaluation process.

**Exhibit 7. Alignment Between CCIP Strategy and CCIP Practice – Evaluation Results**

| CCIP Strategy | CCIP Practice According to Evaluation Data |
|---|---|
| **Targeted area outreach efforts:** | |
| • Canvassing areas impacted by recent violence | • Canvassing is the most common practice used across all CCIP teams |
| • Engaging residents impacted by recent violence | • Engaging residents is a common practice across all CCIP teams |
| • Participating in community events in areas impacted by recent violence | • Attending community events is a common practice for some CCIP teams but uncommon for other teams. Community events are rarely organized by CCIP or PAAN, and typically are events that CCIP staff attend as individuals |
| • Safe spaces established within the targeted area | • Establishing safe spaces was not evident |
| • Key community stakeholders identified and utilized in targeted area | • Utilizing or identifying community stakeholders was not evident; a lack of reliable community stakeholders was evident |
| **Street mediations and violence interventions:** | |
| • Individual | There was some evidence through data from the documents, interviews, and focus groups that street mediations and violence interventions occur with individuals, but these encounters are probably better described as outreach conversations to share information about CCIP services. Many staff who knew about the YVRP program suggested a return to using a case management approach, where individual relationships and individual development outcomes are a stronger focus. |
| • Group/gang<br>• Hospital | There was very little evidence through data from the documents, interviews, and focus groups that street mediations and violence interventions occur with gangs or groups, or at the hospital. Hospital access has been limited due to pandemic-related restrictions. There is some evidence of asking groups or individuals to "cool down," but more evidence to suggest that this is not a common practice.<br><br>There was some evidence to suggest that mediations are uncommon due to the lack of safety equipment for CCIP staff; the volatility of would-be shooters, who may not want to hear from "an old head"; and the rarity among staff of the skills/temperament needed to perform a successful mediation. |

| CCIP Strategy | CCIP Practice According to Evaluation Data |
|---|---|
| **Contact with high-risk individuals (identified by law enforcement partners)**<br>• Rapport building/mentorship<br>• Employment/ training opportunities<br>• Connection resources<br>• Collateral contacts<br>• Referrals/case management | There was very little evidence through data from the documents, interviews, and focus groups that law enforcement is identifying high-risk individuals to be contacted by CCIP staff for mentoring or services. More commonly, CCIP receives information about victims and family members of victims, to whom support is then provided. Referrals are made for services within and outside of PAAN, but there is no case management function within CCIP. While there are case managers within the Human Services Department at PAAN and referral information is available to CCIP staff , CCIP staff reported that they do not routinely know what happens to the referrals they submit. Some CCIP staff lamented that it often takes as long as 2 weeks for individuals to hear back from the other departments at PAAN or from organizations external to PAAN (e.g., housing assistance). The Executive Director indicates that recent improvements have been made in this area in response to staff concerns and referrals should be addressed within 72 hours of receipt. |
| **Post shooting response(s) in targeted area**<br>• Street-level intelligence gathering | Street-level intelligence gathering that aids police investigations was discussed as a negative aspect of what CCIP Advocates are sometimes asked to do. Staff appeared reluctant to perform this aspect of their job, fearing it could erode trust in the community and place Advocates and their families in danger. |
| • Community vigils<br>• Community rallies<br>• Peace and faith marches | Beyond the targeted outreach in areas recently affected by violence (Task 1) and participation in community events (Task 2), there was not much evidence that CCIP staff are attending marches, vigils, or rallies on behalf of the program (vs. personally). |
| • Public messaging campaigns (You Shoot Now What) | Outside of being present at community events, there was no evidence of CCIP being involved in public messaging campaigns, and many staff including directors and those in administrative positions showed disappointment that CCIP and PAAN are not well known or do not have a high profile in the city more generally. The handouts that advocates use and the handouts at PAAN/CCIP offices do not include materials from the You Shoot Now What public messaging campaign described in the CCIP strategy document. |
| **Positive contact/relationships with Law enforcement**<br>• Interactions with law enforcement | CCIP Advocates operate using daily shooting reports supplied by police through OVP, but they do not want to be seen with police in the community unless it is at a community event where many different groups and people are gathered. Most Advocates do not coordinate their work in any meaningful way with police. |

**Management Practices:** There is no director or single point of authority overseeing CCIP, other than PAAN's Executive Director, who oversees every aspect of the organization. The reasons given by staff for why there is variation in implementation practices, and quality of work, all lead back to the lack of a program director. Staff described a lack of strong supervision practices, no clear chain of command, and perceptions of unequal work done by different shifts due to the time of day/day of the week (when staff may be more or less likely to be in harm's way, feel unsafe, or experience a higher degree of secondary trauma and burnout). The open-door policy to the Executive Director (inherited from the previous director) was mentioned by staff across the agency as a practice that can lead to staff undermining a supervisor's authority. The Executive Director has discussed this issue with staff and knows they have this concern.

**Staff Development and Support:** There is concern that some employees who are also returning citizens do not have the workplace skills to perform in an accountable manner, including basic duties such as coming to work on time, despite receiving a training to help them adjust to workplace culture and perform up to expectations. Relatedly, there is no clear and consistent training or professional development structure within CCIP. The training that Cure Violence provided to staff was only mentioned by a handful of staff, and these staff did not see this as a training; they saw it as an opportunity to hear about how "people in Chicago deal with gun violence," adding that Chicago's situation is very different than what is happening (i.e., causing violence) in Philadelphia. A recurring theme from staff is a sense that management does not "appreciate" the work they are doing, and they cite low pay and lack of recognition as evidence of this disconnect with management.

**External Factors Affecting CCIP Performance:** The evaluation did not have access to information on the amount of time that elapses between when a referral is made and when a referral is completed, but staff reported lengthy waits for youth referrals to produce needed money, jobs, transportation, or housing. Delays in the referral process have anecdotally resulted in youth "heating up again" and in some cases youth becoming homicide victims themselves. Some partners to PAAN were described as unreliable and difficult for community members to access, hear back from, or receive services from in a timely manner. This complaint was also evident during the ride alongs when community members approached PAAN staff asking for help, describing their failed attempts to receive help from other organizations to address a variety of needs they presented, from housing to healthcare. Many staff as well as police personnel CCIP and PAAN expressed a sense that there are too many contributing factors driving violence, that are out of their hands (e.g., influx of guns, social media "beefs"). Across the board, from all individuals who shared insights through this evaluation, people expressed feelings of exhaustion and exasperation, saying that strategies that once worked to reach youth at risk for violence are no longer effective and that the ease with which anyone at any age can get a gun makes this work more difficult than ever.

Case ID: 240300240

# Conclusion

Despite inconsistencies in CCIP's implementation processes and the lack of a strong infrastructure to support consistent implementation, the evaluability assessment results indicate that CCIP is ready for an outcome evaluation that measures outputs in the short term, such as number and type of referrals made and completed; and mid-term outcomes to measure what happens as a result of the referral (e.g., enrollment in a job program, trauma counseling, relocation, optimistic attitudes and beliefs ). Measuring the short- and mid-term outcomes from CCIP's current approach can be used to strengthen the program model by pointing to key areas of success that can be expanded through more consistent implementation practices. This would be a more data-driven approach to improving implementation than forcing compliance to a model based on an untested theory of change. CCIP and PAAN generate a great deal of information through various types of reporting, including a field-ready app to collect real-time data, but most of their documentation efforts are paper-based and not conducive to learning internally or sharing externally. However, if streamlined and automated these reporting processes can easily support an evaluation process to measure outcomes from the program. There is also a sincere willingness to learn and understand where CCIP is working well and where it needs improvement. PAAN has been eager, transparent, professional, and accommodating throughout the evaluation process, and the organization would be a reliable and helpful evaluation partner in a study of CCIP's outcomes.

On the other hand, an impact evaluation that measures long-term change, be it violence reduction or other long-term outcomes, is not recommended for CCIP at this time, because 1) implementation practices are too inconsistent to know what activities are related to what impacts, and 2) the most common practices in use by CCIP do not provide staff with a means to work with individuals through the referral process and support whatever needs they have that will reduce future risk for violence in the future—where impact is measured at both the individual and community levels of analysis. An impact study of CCIP as it operates today would not produce results that accurately measure the program's influence on violence prevention and victimization outcomes.

Case ID: 240300240

# Recommendations

Based on the results from the evaluability assessment and process evaluation, the following recommendations are offered for consideration.

**Recommendation 1:** Implement a retrospective outcome evaluation that examines outcomes from CCIP's last 12 months of individual referrals, from June 1, 2021, through May 30, 2022. The outcome evaluation would assess the quality and expediency of the referral process itself, the recipient's experience with the referral process and how it has impacted their well-being (including norms of violence or actual engagement in violence), and the extent to which different parts of the city or different populations experience differential outcomes due to cultural, linguistic, or other barriers to service.

**Recommendation 2:** Use results from the outcome evaluation to fine-tune the CCIP theory of change and develop a staff training, implementation, and continuous quality improvement process that truly reflects this theory of change. Once this theory of change and implementation process is in place, an impact study can be reconsidered.

**Recommendation 3:** Produce a community crisis needs gap and cost analysis that allows PAAN and OVP to determine the nature, scope, and dollar amount of resources/services requested and provided through referrals to individuals over the 12-month period, and how well the resources provided match the level of need in referral requests.

**Recommendation 4**: Strengthen CCIP capacity to use the large amount of data it collects by identifying ways to streamline, coordinate, and automate the process for documenting, tracking, analyzing, and reporting on CCIP program processes and outcomes, including referrals to other PAAN programs and departments. These improvements will lead to more useful and accurate reports to OVP and outward-facing stakeholders, while producing digestible information internally at shift meetings and other staff gatherings to acknowledge the work staff do, identify areas of innovation, and seize opportunities for learning and improvement.

**Recommendation 5**: Consider a structural change to how CCIP is organized, by identifying a person to serve as program director, and making that role responsible for 1) staff hiring, training, development, and retention, 2) implementation quality, and 3) using data and information to report out on CCIP operations and what outcomes CCIP is producing. PAAN not having autonomy as its own 501(c)(3) potentially limits the ability to create this type of sustainable management structure for CCIP, so a broader organizational assessment might be needed to determine the best way to proceed on this front.

Case ID: 240300240

# References

Palmer, C. (2021, January 4). Philly's violent year: Nearly 500 people were killed and more than 2,200 shot in 2020. *The Philadelphia Inquirer*. https://www.inquirer.com/news/philadelphia-gun-violence-homicides-shootings-pandemic-2020-20210101.html

Philadelphia Police Department. (n.d.). *Crime Maps and Stats*. Data retrieved August 8, 2022, from https://www.phillypolice.com/crime-maps-stats/

World Health Organization. (2014). *Global status report on violence prevention*. https://www.who.int/publications/i/item/9789241564793

Harrell, A., Burt, M., Hatry, H., Rossman, S., Roth, J., & Sabol, W. (1996). *Evaluation strategies for human services programs*. Urban Institute.

Jacobs, F. H., Kapuscik, J. L., Williams, P. H., & Kates, E. (2000). *Making it count—Evaluating family preservation services* (ch.3). Tufts University.

   CCIP Evaluability and Process Evaluation Results – NOT FOR PUBLIC DISSEMINATION   Case ID: 240300240

## About the American Institutes for Research

Established in 1946, with headquarters in Arlington, Virginia, the American Institutes for Research® (AIR®) is a nonpartisan, not-for-profit organization that conducts behavioral and social science research and delivers technical assistance to solve some of the most urgent challenges in the U.S. and around the world. We advance evidence in the areas of education, health, the workforce, human services, and international development to create a better, more equitable world. The AIR family of organizations now includes IMPAQ, Maher & Maher, and Kimetrica. For more information, visit AIR.ORG.



**AIR® Headquarters**
1400 Crystal Drive, 10th Floor
Arlington, VA 22202-3289
+1.202.403.5000 | **AIR.ORG**

Notice of Trademark: "American Institutes for Research" and "AIR" are registered trademarks. All other brand, product, or company names are trademarks or registered trademarks of their respective owners.

Copyright © 2022 American Institutes for Research®. All rights reserved. No part of this publication may be reproduced, distributed, or transmitted in any form or by any means, including photocopying, recording, website display, or other electronic or mechanical methods, without the prior written permission of the American Institutes for Research. For permission requests, please use the Contact Us form on AIR.ORG.

# EXHIBIT B

The Philadelphia Courts
# Civil Docket Access

No Items in Cart  |  LOGOUT  | Isteins

**Civil Docket Report**

A $5 Convenience fee will be added to the transaction at checkout,

## Case Description

| | |
|---|---|
| **Case ID:** | 240300240 |
| **Case Caption:** | BODDIE VS HENNYS SPORTS BAR ETAL |
| **Filing Date:** | Monday , March 04th, 2024 |
| **Court:** | MAJOR JURY-STANDARD |
| **Location:** | CITY HALL |
| **Jury:** | JURY |
| **Case Type:** | PERSONAL INJURY - OTHER |
| **Status:** | WAITING TO LIST CASE MGMT CONF |

## Related Cases

*No related cases were found.*

## Case Event Schedule

*No case events were found.*

## Case motions

*No case motions were found.*

## Case Parties

| Seq # | Assoc | Expn Date | Type | Name |
|---|---|---|---|---|
| 1 | | | ATTORNEY FOR PLAINTIFF | HOFFMAN, BENJAMIN C |
| **Address:** | 1617 JOHN F KENNEDY BLVD #355 PHILADELPHIA PA 19103 (215)563-6333 bhoffman@clearfieldlawyers.com | **Aliases:** | *none* | |
| 2 | 1 | | PLAINTIFF | BODDIE, MARCEL |
| **Address:** | 2816 N. 21ST STREET PHILADELPHIA PA 19132 | **Aliases:** | *none* | |
| 3 | 16 | | DEFENDANT | SOK, LYLY |
| **Address:** | 108 N. DREXEL AVENUE HAVERTOWN PA 19083 | **Aliases:** | *none* | |

| 4 | 16 | | DEFENDANT | ENG, DAVUTH |
|---|---|---|---|---|
| **Address:** | 108 N. DREXEL AVENUE HAVERTWON PA 19083 | **Aliases:** | *none* | |

| 5 | 19 | | DEFENDANT | URBAN AFFAIRS COALITION |
|---|---|---|---|---|
| **Address:** | 1650 ARCH STREET PHILADELPHIA PA 19103 | **Aliases:** | *none* | |

| 6 | | | DEFENDANT | JOHN DOE SECURITY COMPANY |
|---|---|---|---|---|
| **Address:** | ANY STREET ANY CITY PA 00000 | **Aliases:** | *none* | |

| 7 | | | DEFENDANT | JOHN DOE CONTRACTOR |
|---|---|---|---|---|
| **Address:** | ANY STREET ANY CITY PA 00000 | **Aliases:** | *none* | |

| 8 | 16 | | DEFENDANT | HENNYS SPORTS BAR |
|---|---|---|---|---|
| **Address:** | 2748 N. 29TH STREET PHILADELPHIA PA 19131 | **Aliases:** | *none* | |

| 9 | | | DEFENDANT | JARDINE, ANTONIO |
|---|---|---|---|---|
| **Address:** | 1827 S. TAYLOR STREET PHILADELPHIA PA 19145 | **Aliases:** | COOPER, MARKER | |

| 10 | 16 | | DEFENDANT | 29TH HHS INC |
|---|---|---|---|---|
| **Address:** | 2748 N. 29TH STREET PHILADELPHIA PA 19132 | **Aliases:** | *none* | |

| 11 | 19 | | DEFENDANT | PHILADELPHIA ANTI-DRUG ANTI-VIOLENCE NETWORK |
|---|---|---|---|---|
| **Address:** | 2700 N. 17TH STREET SUITE 200 PHILADELPHIA PA 19104 | **Aliases:** | *none* | |

| 12 | 19 | | DEFENDANT | MOSEE JR, GEORGE |
|---|---|---|---|---|
| **Address:** | C/O PHILADELPHIA ANTI-DRUG ANT 2700 N. 17TH STREET SUITE 200 PHILADELPHIA PA 19104 | **Aliases:** | *none* | |

| 13 | 21 | | DEFENDANT | ATWOOD, ERICA |
|---|---|---|---|---|
| **Address:** | C/O CITY OF PHILADELPHIA CITY SOLICITORS OFFICE 1515 ARCH STREET, 14TH FLOOR PHILADELPHIA PA 19103 | **Aliases:** | *none* | |

| 14 | 21 | | DEFENDANT | REVELL, SHONDELL |
|---|---|---|---|---|
| **Address:** | C/O CITY OF PHILADELPHIA CITY SOLICITORS OFFICE 1515 ARCH STREET, 14TH FLOOR PHILADELPHIA PA 19103 | **Aliases:** | *none* | |

| 15 | 21 | | DEFENDANT | CITY OF PHILADELPHIA |
|---|---|---|---|---|
| **Address:** | CITY SOLICITOR'S OFFICE 1515 ARCH STREET 14TH FLOOR PHILADELPHIA PA 19103 | **Aliases:** | *none* | |

| 16 | | | ATTORNEY FOR DEFENDANT | MCCREESH IV, JOHN J |
|---|---|---|---|---|
| **Address:** | 7053 TERMINAL SQUARE UPPER DARBY PA 19082 (610)734-2160 johniv@mccreeshlaw.com | **Aliases:** | *none* | |

| 17 | | | TEAM LEADER | ANDERS, DANIEL J |
|---|---|---|---|---|
| **Address:** | 529 CITY HALL PHILADELPHIA PA 19107 | **Aliases:** | *none* | |

| 18 | | | ATTORNEY FOR DEFENDANT | STEINS, LAUREN MICHELLE |
|---|---|---|---|---|
| **Address:** | 1601 MARKET STREET SUITE 3400 PHILADELPHIA PA 19103 (215)587-9400 LSteins@DMVLawfirm.com | **Aliases:** | *none* | |

| 19 | | | ATTORNEY FOR DEFENDANT | DEASEY, FRANCIS J |
|---|---|---|---|---|
| **Address:** | DEASEY MAHONEY & VALENTINI LTD 1601 MARKET ST 34TH FLOOR PHILADELPHIA PA 19103 (215)587-9400 fjdeasey@dmvlawfirm.com | **Aliases:** | *none* | |

| 20 | 19 | | ATTORNEY FOR DEFENDANT | RAUSCH, MICHAEL P |
|---|---|---|---|---|
| **Address:** | DEASEY MAHONEY & VALENTINI LTD 1601 MARKET STREET SUITE 3400 PHILADELPHIA PA 19103 (215)587-9400 mrausch@dmvlawfirm.com | **Aliases:** | *none* | |

| 21 | | | ATTORNEY FOR DEFENDANT | ZURBRIGGEN, ADAM R |
|---|---|---|---|---|
| **Address:** | 1515 ARCH STREET 14TH FL. PHILADELPHIA PA 19102 (215)683-5114 adam.zurbriggen@phila.gov | **Aliases:** | *none* | |

## Docket Entries

| Filing Date/Time | Docket Type | Filing Party | Disposition Amount |
|---|---|---|---|
| 04-MAR-2024 10:45 AM | ACTIVE CASE | | |

| Docket Entry: | E-Filing Number: 2403004463 | | |
|---|---|---|---|
| | | | |
| 04-MAR-2024 10:45 AM | COMMENCEMENT CIVIL ACTION JURY | HOFFMAN, BENJAMIN C | |
| Documents: | Final Cover | | |
| Docket Entry: | *none.* | | |
| | | | |
| 04-MAR-2024 10:45 AM | COMPLAINT FILED NOTICE GIVEN | HOFFMAN, BENJAMIN C | |
| Documents: | NEW COMPLAINT.pdf | | |
| Docket Entry: | COMPLAINT WITH NOTICE TO DEFEND WITHIN TWENTY (20) DAYS AFTER SERVICE IN ACCORDANCE WITH RULE 1018.1 FILED. | | |
| | | | |
| 04-MAR-2024 10:45 AM | JURY TRIAL PERFECTED | HOFFMAN, BENJAMIN C | |
| Docket Entry: | 8 JURORS REQUESTED. | | |
| | | | |
| 04-MAR-2024 10:45 AM | WAITING TO LIST CASE MGMT CONF | HOFFMAN, BENJAMIN C | |
| Docket Entry: | *none.* | | |
| | | | |
| 05-MAR-2024 04:32 PM | ENTRY OF APPEARANCE | MCCREESH IV, JOHN J | |
| Documents: | 29th HHS (Entry of Appearance Boddie 2).pdf | | |
| Docket Entry: | ENTRY OF APPEARANCE OF JOHN J MCCREESH FILED. (FILED ON BEHALF OF 29TH HHS INC, HENNYS SPORTS BAR, DAVUTH ENG AND LYLY SOK) | | |
| | | | |
| 07-MAR-2024 12:57 PM | ACCEPTANCE OF SERVICE FILED | HOFFMAN, BENJAMIN C | |
| Documents: | 29th HHS (Acceptance of Service).pdf | | |
| Docket Entry: | SERVICE OF PLAINTIFF'S COMPLAINT ACCEPTED BY LYLY SOK, HENNYS SPORTS BAR, DAVUTH ENG AND 29TH HHS INC ON 03/07/2024 FILED. (FILED ON BEHALF OF MARCEL BODDIE) | | |
| | | | |

| 08-MAR-2024 10:24 AM | AFFIDAVIT OF SERVICE FILED | | |
|---|---|---|---|
| **Documents:** | Affidavit of Service | | |
| **Docket Entry:** | AFFIDAVIT OF SERVICE OF PLAINTIFF'S COMPLAINT UPON CITY OF PHILADELPHIA, SHONDELL REVELL AND ERICA ATWOOD BY PERSONAL SERVICE ON 03/08/2024 FILED. | | |
| | | | |
| 12-MAR-2024 12:53 AM | ATTEMPTED SERVICE - NOT FOUND | | |
| **Documents:** | Affidavit of Service | | |
| **Docket Entry:** | ANTONIO JARDINE NOT FOUND ON 03/11/2024. | | |
| | | | |
| 19-MAR-2024 12:11 AM | AFFIDAVIT OF SERVICE FILED | | |
| **Documents:** | Affidavit of Service | | |
| **Docket Entry:** | AFFIDAVIT OF SERVICE OF PLAINTIFF'S COMPLAINT UPON GEORGE MOSEE AND PHILADELPHIA ANTI-DRUG ANTI-VIOLENCE NETWORK BY PERSONAL SERVICE ON 03/18/2024 FILED. | | |
| | | | |
| 26-MAR-2024 04:03 PM | ENTRY OF APPEARANCE | STEINS, LAUREN MICHELLE | |
| **Documents:** | 3.26.24 EOA FJD MPR LMS.pdf | | |
| **Docket Entry:** | ENTRY OF APPEARANCE OF MICHAEL P RAUSCH, LAUREN MICHELLE STEINS AND FRANCIS J DEASEY FILED. (FILED ON BEHALF OF GEORGE MOSEE, PHILADELPHIA ANTI-DRUG ANTI-VIOLENCE NETWORK AND URBAN AFFAIRS COALITION) | | |
| | | | |
| 26-MAR-2024 04:03 PM | JURY TRIAL PERFECTED | STEINS, LAUREN MICHELLE | |
| **Docket Entry:** | 12 JURORS REQUESTED. | | |
| | | | |
| 26-MAR-2024 04:53 PM | ENTRY OF APPEARANCE | ZURBRIGGEN, ADAM R | |
| **Documents:** | AZ EOA.pdf | | |
| **Docket Entry:** | ENTRY OF APPEARANCE OF ADAM R ZURBRIGGEN FILED. (FILED ON BEHALF OF CITY OF PHILADELPHIA, SHONDELL REVELL AND ERICA ATWOOD) | | |

| 26-MAR-2024 04:53 PM | CITY CHARGE SUBSEQUENT FILINGS | ZURBRIGGEN, ADAM R | |
|---|---|---|---|
| **Docket Entry:** | *none.* | | |

▶ Case Description    ▶ Related Cases    ▶ Event Schedule    ▶ Case Parties    ▶ Docket Entries

[ E-Filing System ]    [ Search Home ]

# EXHIBIT C

# Lauren Steins

| | |
|---|---|
| **From:** | johniv@mccreeshlaw.com |
| **Sent:** | Wednesday, March 27, 2024 9:30 AM |
| **To:** | Lauren Steins |
| **Subject:** | RE: Boddie v. PAAN et al [IMAN-ACTIVE.FID111500] |

Yes.  I consent

Thanks

John McCreesh, IV

McCreesh, McCreesh & Cannon
7053 Terminal Square
Upper Darby, Pa. 19082
Phone (610) 734-2160
Fax (610) 734-2165

Confidentiality Notice:  This e=mail communication and any attachments may contain confidential an privileged information for the use of the designated recipients.  If you are not the intended recipient (or authorized to receive for the recipient) you are hereby notified that you have received this communication in error and that any review, disclosure, dissemination, distribution or copying of it or its contents is prohibited.  If you have received this communication in error, please destroy all copies of this communication and any attachment and contact the sender by reply e-mail or telephone (610) 734-2160

**From:** Lauren Steins <lsteins@dmvlawfirm.com>
**Sent:** Wednesday, March 27, 2024 9:10 AM
**To:** johniv@mccreeshlaw.com
**Cc:** Mike Rausch <mrausch@dmvlawfirm.com>
**Subject:** RE: Boddie v. PAAN et al [IMAN-ACTIVE.FID111500]

Hi John –

Following up on the below.  Can you please let me know ASAP so I can get this removed?

Thanks

Lauren M. Steins, Esquire
DEASEY, MAHONEY & VALENTINI, LTD.
p: 215.587.9400 (x1191)

**From:** Lauren Steins
**Sent:** Tuesday, March 26, 2024 1:44 PM
**To:** johniv@mccreeshlaw.com

1

**Cc:** Mike Rausch <mrausch@dmvlawfirm.com>
**Subject:** Boddie v. PAAN et al [IMAN-ACTIVE.FID111500]

Hi John –

I hope all is well.  Based on the allegations in the complaint, I would like to move this case to federal court.  I need consent of all served Defendants (which would include your clients, the City, and my clients).  Do we have your consent to proceed with the removal?


Thanks!




Lauren M. Steins, Esquire
Partner
DEASEY, MAHONEY & VALENTINI, LTD.
Suite 3400
1601 Market Street
Philadelphia, PA 19103-2301
p: 215.587.9400 (x1191)
f: 215.587.9456
www.dmvlawfirm.com

This E-Mail message and any documents accompanying this E-Mail transmission contain information from the law firm of Deasey, Mahoney & Valentini, Ltd. which is "Privileged and confidential attorney-client communication and/or work product of counsel." If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution and/or the taking of or refraining from taking of any action in reliance on the contents of this E-Mail information is strictly prohibited and may result in legal action being instituted against you. Please reply to the sender advising of the error in transmission and delete the message and any accompanying documents from your system immediately. Thank you.

## Lauren Steins

| | |
|---|---|
| **From:** | Danielle Walsh <Danielle.Walsh@phila.gov> |
| **Sent:** | Tuesday, March 26, 2024 2:45 PM |
| **To:** | Lauren Steins; Mike Rausch |
| **Cc:** | Adam Zurbriggen; Ken Butensky |
| **Subject:** | FW: Boddie v. City of Philadelphia, et al [IMAN-ACTIVE.FID111500] |
| **Attachments:** | New Complaint TS.pdf |

Thanks for reaching out Lauren,

This one is my fault, I recently transitioned to my new position and must have let this slip through the cracks. Adam Zurbriggen, copied here, will be entering for the City, Erica Atwood, and Shondell Revel. We would certainly consent to removal.

Please let us know what you need on our end, thank you for reaching out.

Danielle E. Walsh
Chief Deputy City Solicitor
City of Philadelphia Law Department
Civil Rights Unit
1515 Arch Street, 14th Floor
Philadelphia, PA 19102
(215) 686-0464
(215) 866-6526 (cell)
(215) 683-5299 (fax)
danielle.walsh@phila.gov

**From:** Ken Butensky <Ken.Butensky@phila.gov>
**Sent:** Tuesday, March 26, 2024 1:44 PM
**To:** Danielle Walsh <Danielle.Walsh@phila.gov>
**Subject:** FW: Boddie v. City of Philadelphia, et al [IMAN-ACTIVE.FID111500]

Hi Danielle.

Would CRU be handling this matter?

Thank you.

Ken

**From:** Lauren Steins <lsteins@dmvlawfirm.com>
**Sent:** Tuesday, March 26, 2024 1:20 PM
**To:** Ken Butensky <Ken.Butensky@phila.gov>
**Cc:** Mike Rausch <mrausch@dmvlawfirm.com>
**Subject:** Boddie v. City of Philadelphia, et al [IMAN-ACTIVE.FID111500]

**External Email Notice. This email comes from outside of City government. Do not click on links or open attachments unless you recognize the sender.**

Hi Ken –

I hope all is well. I am representing the co-defendant in this case and would like to remove it to EDPA.  I saw the City was served, but no one has entered yet.  Can you confirm for me who will be appearing on behalf of the City so I can reach out to them and obtain their consent to file the removal?

Thank you!



Lauren M. Steins, Esquire
Partner
DEASEY, MAHONEY & VALENTINI, LTD.
Suite 3400
1601 Market Street
Philadelphia, PA 19103-2301
p: 215.587.9400 (x1191)
f: 215.587.9456
www.dmvlawfirm.com

This E-Mail message and any documents accompanying this E-Mail transmission contain information from the law firm of Deasey, Mahoney & Valentini, Ltd. which is "Privileged and confidential attorney-client communication and/or work product of counsel." If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution and/or the taking of or refraining from taking of any action in reliance on the contents of this E-Mail information is strictly prohibited and may result in legal action being instituted against you. Please reply to the sender advising of the error in transmission and delete the message and any accompanying documents from your system immediately. Thank you.

# EXHIBIT D

**DEASEY, MAHONEY & VALENTINI, LTD.**
By:   **FRANCIS J. DEASEY, ESQUIRE**
       **MICHAEL P. RAUSCH, ESQUIRE**
       **LAUREN M. STEINS, ESQUIRE**
**Attorney I.D. No. 25699/74286/314105**
**1601 Market Street, Suite 3400**
**Philadelphia, PA 19103-2301**
**(215) 587-9400 – Office**
**(215) 587-9456 – Facsimile**

*Attorneys for Defendants,*
*Philadelphia Anti-Drug Anti-*
*Violence Network, Urban Affairs*
*Coalition and George Mosee, Jr.*

| | | |
|---|---|---|
| **MARCEL BODDIE** | : | **COURT OF COMMON PLEAS** |
| | : | **PHILADELPHIA COUNTY** |
|       **Plaintiff,** | : | |
| | : | |
|     **v.** | : | **MARCH TERM, 2024** |
| | : | |
| **HENNYS SPORTS BAR, ANTONIO** | : | **NO. 00240** |
| **JARDINE a/k/a MARK COOPER,** | : | |
| **ET AL.** | : | |
|       **Defendants.** | : | **JURY TRIAL DEMANDED** |

## NOTICE TO PLAINTIFF

TO:   Benjamin C. Hoffman, Esquire
      Clearfield & Kofsky
      One Penn Center at Suburban Station
      1617 JFK Boulevard, Suite 355
      Philadelphia, PA 19103

Please take notice that Defendants, Philadelphia Anti-Drug, Anti-Violence, Urban Affairs Coalition and George Mosee, Jr., have filed a Notice of Removal in the United States District Court for the Eastern District of Pennsylvania, removing this civil action now pending in the Court of Common Pleas of Philadelphia County pursuant to 28 U.S.C. §1446(d), et seq. Also, please take notice that Defendants have filed in the United States District Court for the Eastern District of Pennsylvania a copy of the Complaint served upon it which was filed in the Court of Common Pleas of Philadelphia County.

#11746925v1

Copies of this Notice of Removal and Complaint are attached to this Notice and along with this Notice are being served upon you.

Respectfully submitted,

**DEASEY, MAHONEY, & VALENTINI, LTD.**

By:      /s/ *Lauren M. Steins*
**FRANCIS J. DEASEY, ESQUIRE**
**MICHAEL P. RAUSCH, ESQUIRE**
**LAUREN M. STEINS, ESQUIRE**
Attorneys for Defendants,
Philadelphia Anti-Drug Anti-Violence Network,
Urban Affairs Coalition and George Mosee, Jr.

Dated:  April 3, 2024

## **CERTIFICATE OF SERVICE**

I, Lauren M. Steins, Esquire, hereby certify that, on the date set forth below, I did cause a true and correct copy of the foregoing Notice to Plaintiff to be served on all counsel of record via email.

**DEASEY, MAHONEY, & VALENTINI, LTD.**

By:      /s/ *Lauren M. Steins*                
**LAUREN M. STEINS, ESQUIRE**

Dated:  April 3, 2024

# EXHIBIT E

**DEASEY, MAHONEY & VALENTINI, LTD.**
By:   **FRANCIS J. DEASEY, ESQUIRE**
       **MICHAEL P. RAUSCH, ESQUIRE**
       **LAUREN M. STEINS, ESQUIRE**
**Attorney I.D. No. 25699/74286/314105**
**1601 Market Street, Suite 3400**
**Philadelphia, PA 19103-2301**
**(215) 587-9400 – Office**
**(215) 587-9456 – Facsimile**

*Attorneys for Defendants,*
*Philadelphia Anti-Drug Anti-*
*Violence Network, Urban Affairs*
*Coalition and George Mosee, Jr.*

| | | |
|---|---|---|
| **MARCEL BODDIE** | : | **COURT OF COMMON PLEAS** |
| | : | **PHILADELPHIA COUNTY** |
| Plaintiff, | : | |
| | : | **MARCH TERM, 2024** |
| v. | : | |
| | : | |
| **HENNYS SPORTS BAR, ANTONIO** | : | **NO. 00240** |
| **JARDINE a/k/a MARK COOPER,** | : | |
| **ET AL.** | : | |
| | : | |
| Defendants. | : | **JURY TRIAL DEMANDED** |

## PRAECIPE TO FILE NOTICE OF REMOVAL

TO THE PROTHONOTARY:

Pursuant to 28 U.S.C. §1446(d), Philadelphia Anti-Drug, Anti-Violence Network, Urban

Affairs Coalition and George Mosee, Jr., file herewith a certified copy of the Notice of Removal,

original of which was filed with the Clerk of the United States District Court for the Eastern

District of Pennsylvania on April 3, 2024.

Respectfully submitted,

**DEASEY, MAHONEY, & VALENTINI, LTD.**

By:    */s/ Lauren M. Steins*
       **FRANCIS J. DEASEY, ESQUIRE**
       **MICHAEL P. RAUSCH, ESQUIRE**
       **LAUREN M. STEINS, ESQUIRE**
       Attorneys for Defendants,
       Philadelphia Anti-Drug Anti-Violence Network,
       Urban Affairs Coalition and George Mosee, Jr.

Dated: April 3, 2024

#11746923v1

## CERTIFICATE OF SERVICE

I, Lauren M. Steins, Esquire, hereby certify that, on the date set forth below, I did cause a true and correct copy of the foregoing Notice of Removal to be served on the following individuals via Court E-filing:

**Counsel for Plaintiff, Marcel Boddie**
Benjamin C. Hoffman, Esquire
Clearfield & Kofsky
One Penn Center at Suburban Station
1617 JFK Boulevard, Suite 355
Philadelphia, PA  19103


**Counsel for Co-Defendants, 29th HHS, Inc.,**
**Henny Sports Bar, Davuth Eng and Lyly Sok**
John J. McCreesh, IV., Esquire
McCreesh Law Office
7053 Terminal Square
Upper Darby, PA  19082


**Counsel for Co-Defendants, City of Philadelphia,**
**Erica Atwood, and Shondell Revell**
Adam R. Zurbriggen Esquire
Deputy City Solicitor
City of Philadelphia Law Department
1515 Arch Street, 14th Floor
Philadelphia, PA  19102




**DEASEY, MAHONEY, & VALENTINI, LTD.**

**By:**   */s/ Lauren M. Steins*
          **LAUREN M. STEINS, ESQUIRE**


Dated:  April 3, 2024