**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MARCEL BODDIE,** | : | |
| **Plaintiff,** | : | |
| | : | |
| | : | **Civil Action** |
| **v.** | : | **No. 24-1393** |
| | : | |
| **HENNY'S SPORTS BAR, et al.,** | : | |
| **Defendants.** | : | |
| | : | |

## <u>ORDER</u>

AND NOW, this _____ day of _____, 2024, upon consideration of the Motion to Dismiss filed by Defendants City of Philadelphia, Erica Atwood, and Shondell Revell ("the City Defendants"), it is **HEREBY ORDERED** that the Motion is **GRANTED.** Counts I, II, and IV of the Complaint are **DISMISSED WITH PREJUDICE,** as to the City Defendants.

BY THE COURT:

_____
NITZA I. QUIÑONES ALEJANDRO, J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MARCEL BODDIE,** | : | |
| **Plaintiff,** | : | |
| | : | |
| | : | **Civil Action** |
| **v.** | : | **No. 24-1393** |
| | : | |
| **HENNY'S SPORTS BAR, et al.,** | : | |
| **Defendants.** | : | |
| | : | |

## <u>CITY DEFENDANTS' MOTION TO DISMISS<br>FOR FAILURE TO STATE A CLAIM</u>

Defendants City of Philadelphia, Erica Atwood, and Shondell Revell (collectively, the "City Defendants") hereby file this Motion to Dismiss for Failure to State a Claim, pursuant to Federal Rule of Civil Procedure 12(b)(6). In support of this Motion, the City Defendants incorporate the attached Memorandum of Law. The City Defendants respectfully request that this Court dismiss each of the claims against them (Counts I, II, and IV) of the Complaint, with prejudice.

Respectfully submitted,

/s/ Adam R. Zurbriggen
Adam R. Zurbriggen
Deputy City Solicitor
Pa. Attorney ID No. 331169
City of Philadelphia Law Department
1515 Arch Street, 14th Floor
Philadelphia, PA 19102
215-683-5114 (Phone)
215-683-5397 (Fax)
adam.zurbriggen@phila.gov

*Attorney for City Defendants*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MARCEL BODDIE,** | : | |
| **Plaintiff,** | : | |
| | : | |
| | : | **Civil Action** |
| **v.** | : | **No. 24-1393** |
| | : | |
| **HENNY'S SPORTS BAR, et al.,** | : | |
| **Defendants.** | : | |
| | : | |

## MEMORANDUM OF LAW IN SUPPORT OF CITY DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

This lawsuit arises out a shooting that occurred at a bar on April 30, 2022. On that date, according to the Complaint, one of the Defendants, Antonio Jardine, got into a verbal altercation with another individual at the bar. The Plaintiff, Marcel Boddie, allegedly attempted to deescalate that altercation, but Jardine and the other individual began shooting at each other. Plaintiff alleges that, during this firefight, Jardine grabbed him and used him as a human shield, resulting in Plaintiff being shot and suffering other injuries.

In addition to suing Jardine and the bar at which the shooting occurred, Plaintiff has sued the City of Philadelphia and two City officials, Erica Atwood and Shondell Revell (collectively "the City Defendants"), alleging that Jardine was a Community Crisis Intervention Program Advocate, and that the City Defendants' alleged failures in overseeing that program—including hiring convicted felons to serve as program advocates—violated the Plaintiff's Fourteenth Amendment rights under a state-created danger theory of liability.

But even assuming Plaintiff's allegations about the program are true, they do not establish state-created danger liability on the part of the City or its officials. Plaintiff's allegations do not satisfy the elements for a state created danger theory of liability as to the City

Defendants, and even if they did, Jardine's conduct cannot plausibly be attributed to a City policy or failure to train, supervise, or discipline, such that the City can be subject to municipal liability. Accordingly, the City Defendants move to dismiss the claims against them for failure to state a claim.

## I.   ALLEGATIONS AND CLAIMS SET OUT IN THE COMPLAINT RELEVANT TO THIS MOTION[1]

As alleged in the Complaint, on April 30, 2022, Plaintiff, Marcel Boddie ("Plaintiff"), was a patron at Henny's Sports Bar ("the Bar"). *See* Compl., ECF No. 1, at Ex. A (cited hereafter as "Compl.") ¶ 45. On that evening, one of the Defendants, Antonio Jardine ("Jardine"), also allegedly came to the Bar, armed with a firearm. *See id.* ¶ 47.

While at the Bar, Jardine allegedly got into a verbal altercation with another, unnamed person. Compl. ¶ 48. At some point in the altercation, both Jardine and this other person allegedly brandished firearms. *Id.* ¶ 54. According to the Complaint, a gunfight ensued between the two, and during this gunfight, Jardine grabbed Plaintiff—who was allegedly "attempt[ing] to de-escalate the confrontation," *id.* ¶ 49—and "pulled [Plaintiff] in front of him, while at the same time, reaching his other arm around [Plaintiff] and firing his firearm at the other [unnamed] individual." *Id.* ¶ 55. In other words, Jardine allegedly "us[ed] [Plaintiff] as a human shield during the gunfight" with the unnamed person. *Id.* ¶ 56. As a result of being used as a human shield, Plaintiff allegedly suffered injuries including gun shot wounds." *Id.* ¶ 57.

At the time he came to the Bar armed, Jardine was allegedly on duty as a "CCIP [Community Crisis Intervention Program] Advocate." Compl. ¶ 46; *see also id.* ¶ 28. As alleged in the Complaint, the Community Crisis Intervention Program ("the Program"), was

---

[1] The City Defendants assume the well-pled factual allegations of the Complaint to be true only for purposes of this motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), in which the truth of any well pled factual allegations must be assumed.

established by the City of Philadelphia in order to "reduce violence in the City by employing

individuals with prior criminal convictions, to patrol City streets and prevent violent crimes."

*Id.* ¶ 30. According to the Complaint, such "advocates" are labeled by the city as "violence

interrupters," "credible messengers," and "returning citizens." *Id.* ¶ 31.

While the Complaint alleges that the Program was created, and is funded and overseen,

by the City, it is also allegedly managed through a contract with two non-governmental

organizations, the Philadelphia Anti-Drug Anti-Violence Network ("PAAN") and/or the Urban

Affairs Coalition ("UAC"). *See* Compl. ¶¶ 28–29, 32; *see also* ¶¶ 6, 14. According to the

Complaint, the City "maintained control of all aspects of [the Program] including[] hiring

policies (specifically the policy to hire former convicted felons as its [Program] advocates),

training, supervision, customs, policies, funding, and coordination with City Offices and

agencies." *Id.* ¶ 35.

The Complaint does not specifically allege that the City authorizes Program advocates

to carry or use firearms as part of their efforts to intervene to prevent violence—much less to

use their fellow citizens as human shields during a gunfight. But the Complaint does allege that

on the day of the shooting, Jardine was "wearing his PAAN provided attire and driving his

PAAN/City Vehicle." Compl. ¶ 47. And the Complaint alleges certain "failures" in the

Program, including that Program staff "were not all 'on the same page,'" that Program

advocates "are left to determine their own approach to how they conduct their job

responsibilities," and that such advocates "lack the skills and temperament needed to

successfully perform certain job functions." *Id.* ¶ 44.

Plaintiffs initiated this lawsuit by way of the operative seven-count Complaint, filed in

the Philadelphia Court of Common Pleas on March 4, 2024, and removed to this Court on April

3, 2024. *See* ECF No. 1. The Complaint names as Defendants: (1) Jardine, (2) the Bar (as well as the Bar's owner, 29th HHS Inc.), (3) PAAN and UAC (along with their Executive Director, George Mossee), and (4) the City Defendants—specifically, the City; the City's senior director for the Office of Policy and Strategic Initiatives for Criminal Justice, Erica Atwood; and the City's director for the Office of Violence Prevention, Shondell Revell (both offices allegedly had responsibility for funding and overseeing the Program, *see* Compl. ¶¶ 10, 12.)

Relevant to this Motion by the "City Defendants" are Counts I, II, and IV. Count I asserts a claim against each of the City Defendants (among others) under 42 U.S.C. § 1983, alleging that the City Defendants' failure to adequately administer the Program affirmatively created a danger in violation of the substantive component of the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution. *See* Compl. at ¶¶ 63–72. And Count II asserts a related municipal liability claim under § 1983 against the City Defendants (among others), contending that the City's policies with respect to the Program, and/or its failure to train, supervise, and discipline Program advocates resulted in the affirmative creation of the danger to Plaintiff in violation of the substantive component of the Due Process Clause. *See id.* ¶¶ 73–80. Finally, Count IV asserts a negligence claim against the City Defendants (among others) under state law, based on the same alleged failures.

The City Defendants now move to dismiss each of these claims against them.

## II.   LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Under this standard, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *See id.* Put differently, while a court

should accept the truth of a complaint's factual allegations, it should not credit a plaintiff's

"bald assertions" or "legal conclusions." *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906

(3d Cir. 1997) (citations and quotations omitted).

### III.   ARGUMENT

#### A.   Plaintiff Has Failed to Establish that the City Defendants Violated Plaintiff's Due Process Rights Under a State-Created Danger Theory of Liability.

The Fourteenth Amendment's Due Process Clause provides that "[n]o State shall . . .

deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend.

XIV. Because that "Clause is phrased as a limitation on the State's power to act, not as a

guarantee of certain minimal levels of safety and security," it "generally confer[s] no affirmative

right to governmental aid, even where such aid may be necessary to secure life, liberty, or

property interests of which the government itself may not deprive the individual." *DeShaney v.

Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989).

There are only two exceptions to *DeShaney's* rule that government has no general

constitutional duty to protect its citizens from dangers posed by the world at large. First, under

the "special relationship" exception, "when the State takes a person into its custody and holds

him there against his will, the Constitution imposes upon it a corresponding duty to assume some

responsibility for his safety and general well-being." *DeShaney*, 489 U.S. at 199–200. Second

and similarly, under the "state-created danger" theory of liability, a state actor may be liable

"when it affirmatively places a person in a position of danger that the person would not

otherwise have faced," through an affirmative act that "amount[s] to a restraint of personal

liberty that is similar to incarceration or institutionalization." *Mears v. Connolly*, 24 F.4th 880,

883 (3d Cir. 2022) (internal quotation marks and alterations omitted) (quoting *Kamara v. Att'y

Gen.*, 420 F.3d 202, 216 (3d Cir. 2005)).

Plaintiff does not contend that a "special relationship" existed between him and the State, such that the first exception applies and the City Defendants became generally responsible for his safety and well-being. Indeed, it is not alleged that Plaintiff was incarcerated or otherwise held by the State against his will, such that a duty on the part of the government to protect him existed.

Instead, Plaintiff contends that the City Defendants are liable under a state-created danger theory of liability. *See* Compl. ¶¶ 63–72. While that theory has never been recognized by the U.S. Supreme Court, it has been recognized by the U.S. Court of Appeals for the Third Circuit (as well as other circuits), which has required a plaintiff asserting such a claim to plead each of four elements: (1) "foreseeable and fairly direct harm;" (2) "action marked by a degree of culpability that shocks the conscience;" (3) "a relationship with the state making the plaintiff a foreseeable victim, rather than a member of the public in general;" and (4) "an affirmative use of state authority in a way that created a danger, or made others more vulnerable than had the state not acted at all." *Johnson v. City of Phila.*, 975 F.3d 394, 400 (3d Cir. 2020) (internal quotation marks omitted) (quoting *Sauers v. Borough of Nesquehoning*, 905 F.3d 711, 717 (3d Cir. 2018)).

Here, even assuming that Plaintiff has pled an affirmative act satisfying the fourth element through the creation of the Program, the allegations in the Complaint do not suffice to establish the first three elements as to the City Defendants. First, the Complaint does not plausibly allege foreseeable and fairly direct harm flowing from any action on the part of the City Defendants. Rather, the harm that allegedly occurred flowed from a violent and criminal act by another individual, which cannot have reasonably been foreseen by the City Defendants and is highly attenuated from any alleged faults in the administration of the Program alleged in the Complaint. *See, e.g.*, *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 908 (3d Cir. 1997)

(holding that defendants were not liable under a state-created danger theory where they "could not have foreseen that allowing construction workers to use an unlocked back entrance for access to [a] school building would result in [a] murderous act by a mentally unstable third party," and thus "the tragic harm which ultimately befell [the plaintiff] was too attenuated from the defendants' actions to support liability"). Indeed, it is not alleged that Jardine even previously exhibited violence against members of the public, much less that any of the City Defendants were aware of such violent tendencies on Jardine's part.

Second, the Complaint does not allege conduct on the part of the City Defendants that rises to the required degree of culpability: conduct that shocks the conscience. For purposes of the second element of a state-created danger claim—conduct that shocks the conscience—mere negligence is never enough. *See Kedra v. Schroeter*, 876 F.3d 424, 437 (3d Cir. 2017). Rather, the conduct must be "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Id.* (quoting *City of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998)). The conduct alleged of the City Defendants in the Complaint—in sum, allegedly allowing ex-felons to serve as credible messengers to dissuade other members of the community from committing violent acts; and then failing to train them not to commit obviously unlawful acts of violence themselves—simply does not shock the conscience. Indeed, it is not even negligent.

And finally, the Complaint does not plead the third element of a state-created danger claim: a relationship between the Plaintiff and the State making Plaintiff "a foreseeable victim, rather than a member of the public in general." *E.g.*, *Johnson*, 975 F.3d at 400. For this element to be met, the State's action cannot merely present potential harm to the public at large, but rather must present a foreseeable harm to a specific individual or a "discrete class of persons."

7

*E.g.*, *Long v. Cnty. of Armstrong*, 679 F. App'x 221, 223 (3d Cir. 2017) (affirming dismissal of state-created danger claim for failure to satisfy the third element, where an inmate escaped from a county jail due to an allegedly deficient policy and killed the plaintiff's decedent, explaining that "[t]here [were] no allegations that the Jail had any contact with [the decedent]," nor any allegations that "Jail officials knew about" any relationship between the escaped inmate and the victim. As in *Long*, the Complaint does not allege that Plaintiff had any relationship with Jardine—much less that the City Defendants were aware of such relationship, such that Plaintiff was a specific individual (or within a discrete class of individuals) subject to danger. Rather, the Complaint alleges only that Plaintiff was a patron at the Bar at which the alleged gunfight broke out—and who found himself in Jardine's allegedly violent path on the night of the shooting. Thus, the danger to Plaintiff was no more foreseeable than the danger to any other member of the general public, and such a generalized threat to the public cannot support a state-created danger claim. *See id.* ("[W]here the state actor creates only a threat to the general population, the plaintiff fails to show the sufficiently close relationship required under this element, which is in keeping with the general rule that the state is not obligated to protect its citizens from the random, violent acts of private persons." (internal quotation marks and alterations omitted)).

Because Plaintiff cannot establish the first three elements of a state-created danger claim—even assuming the existence of an affirmative act satisfying the fourth-element, Plaintiff's state-created danger claim as to the City Defendants (Count I) fails to state a claim and should be dismissed.

**B.** **Plaintiff's Municipal Liability Claim Against the City Defendants Premised on a State-Created Danger Theory (Count II) Also Fails.**

As set out in Part III.A, above, the Complaint does not sufficiently plead a violation of Plaintiff's substantive due process rights by any of the City Defendants. And where a plaintiff

does not establish that he or she suffered a violation of his or her constitutional rights, a municipal liability claim under 42 U.S.C. § 1983 must fail. *See, e.g.*, *Johnson v. City of Phila.*, 975 F.3d 394, 403 n.13 (3d Cir. 2020) (dismissing municipal liability claim premised on a state-created danger theory, where the court concluded that no substantive due process violation had occurred because the alleged conduct was merely negligent, and explaining that "there must . . . be a violation of the plaintiff's constitutional rights" for a municipal liability claim to proceed (internal quotation marks omitted)); *see also Brown v. Commonwealth of Pa., Dep't of Health Emergency Med. Servs. Training Inst.,* 318 F.3d 473, 482–83 (3d Cir. 2003) (same, explaining that "[t]here ha[d] been no constitutional harm alleged"). Accordingly, Plaintiffs' municipal liability claim against the City premised on a state-created danger theory—Count II—fails to state a claim as well.

But even if Plaintiff could establish some violation of his substantive due process rights, the Complaint still fails to plausibly attribute that violation to a City policy, custom, or failure to train such that the City can be subject to municipal liability under 42 U.S.C. § 1983. Accordingly, Count II should be dismissed as to the City Defendants in any event.[2]

A municipality, such as the City, "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978) ("*Monell*"). Rather, "it is when execution of a government's policy . . . inflicts

---

[2] Count II is brought against the City, as well as Defendants Atwood and Revell *in their official capacities*. *See* Compl. at p. 12. But claims against municipal officials under § 1983 *in their official capacities* are indistinguishable from, and therefore duplicative of, a municipal liability claim against the City itself. *See, e.g.*, *Willingham v. W. Goshen Police Dep't*, 630 F. Supp. 3d 670, 673 (E.D. Pa. 2022) ("Claims against municipal level officials named in their official capacity are indistinguishable from claims against the municipality that employs them . . . .").

the injury that the government as an entity is responsible under § 1983." *Id.*; *see also Mulholland v. County of Berks*, 706 F.3d 227, 237 (3d Cir. 2013) ("Section 1983 does not permit a municipality to be held vicariously liable for the acts of its employees"). To prevail against the City in a § 1983 claim, a plaintiff must allege not only that a constitutionally-protected right has been violated, but that a municipal policy or custom that exhibits deliberate indifference to rights of citizens was the moving force behind the violation. *Monell*, 436 U.S. at 694–95.

In adjudicating *Monell* claims, "courts have recognized a two-path track to municipal liability under § 1983, depending on whether the allegation is based on municipal policy or custom." *Mulholland*, 706 F.3d at 237 (citations and quotations omitted). An official "policy" exists where a decisionmaker with final authority "issues an official proclamation, policy, or edict," while an unofficial municipal "custom" exists only when a practice is "so permanent and well-settled as to virtually constitute law." *See id.* (citations and quotations omitted). In either case, a complaint must include "specific factual allegations referencing the conduct, time, place, and persons responsible for any official municipal policy or custom." *See Torres v. City of Allentown*, No. 07-1934, 2008 WL 2600314, at *5 (E.D. Pa. June 30, 2008) (citing *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005)). And to bring a § 1983 municipal liability claim under *Monell*, Plaintiff must present evidence that a "policy or custom of [the City] was the 'moving force' behind a violation of his [constitutional] rights." *Clark v. Regional Medical First Correctional*, 360 F. App'x 268, 269 (3d Cir. 2010).

Here, the Complaint contains no nonconclusory allegations making it plausible that the City has a policy or custom that both exhibits deliberate indifference to the rights of citizens *and* was a moving force behind the alleged violation of Plaintiff's constitutional rights. To be sure, Plaintiff asserts that the City had a "policy to hire former convicted felons as its [Program]

advocates." Compl. ¶ 35. But the Complaint does not contain factual allegations from which it may be plausibly inferred that such a policy is *deliberately indifferent* to constitutional rights. Indeed, the Complaint does not allege any prior instances (including any instances involving Jardine specifically) in which a Program advocate allegedly committed a violent act in the course of his or her responsibilities, such that the City can be said to have been on notice of, and thus deliberately indifferent to, a high likelihood of violence being inflicted by Program advocates. And even if the Complaint did allege any such past instances, there are no allegations making it unreasonable—much less *deliberately indifferent*—for the City to utilize ex-felons as "credible messengers," Compl. ¶ 31, who can attempt to steer others away from violence. Common sense dictates that such messengers are more "credible" when they can personally speak to the effects of past criminal behavior. The Complaint contains no allegations to the contrary.

No more availing to Plaintiff are the Complaint's assertions that the City's training of Program advocates was deficient. *See, e.g.*, Compl. ¶ 44(d) (citing report that the Program's advocates "did not receive training, or received inadequate training in areas including violence prevention, crisis intervention, and violence interruption"); *id.* ¶ 76 (asserting without specific factual support that the City "failed to properly train [Program] advocates in community re-entry, conflict resolution, and de-escalation, mediation, as well as other necessary training surrounding their placement in neighborhoods known to be at-risk for violent crime, which was a moving force in the deprivation of Plaintiff's constitutional rights"). Notwithstanding this mere assertion, no facts are alleged that make it plausible (or even consistent with common sense and experience) that Jardine's alleged violent and criminal conduct—namely, pulling a person in front of him to use as a human shield while shooting at another person—was *caused* by the City's failure to train him. The Complaint fails to identify *any* specific training that should have

been provided to Jardine, much less training that plausibly would have prevented such an obviously lawless (and deliberate) act. And again, even if such training could be identified, no prior instances of similarly violent and lawless acts on the part of any Program advocate are alleged in the Complaint, such that it may be plausibly inferred that the City was on notice of the danger and was deliberately indifferent to it.

In sum, the Complaint does not plausibly allege that the City had any official policy, unofficial custom, or failed to train its Program advocates in any way that was both deliberately indifferent to, and the moving cause of, the violent act Jardine allegedly committed and the harm Plaintiff suffered. For this independent reason, Plaintiff's municipal liability claim against the City Defendants (Count II) fails to state a claim and should be dismissed.

## C.   Defendants Atwood and Revell are Entitled to Qualified Immunity In Any Event as to the Individual-Capacity Claims Against Them Set Out In Count I.

Qualified immunity shields public officials from liability unless it is "beyond debate" that the federal right they allegedly violated was "clearly established at the time of the challenged conduct." *See George v. Rehiel*, 738 F.3d 562, 579 (3d Cir. 2013). A right only qualifies as clearly established if its "contours . . . are sufficiently clear that every reasonable official would have understood that what [s]he is doing violates that right." *See Ashcroft v. Al-Kidd*, 563 U.S. 731, 741 (2011) (citations and quotations omitted). And importantly, a right must be clearly established "in light of the specific context of the case, not as a broad general proposition." *Mullenix v. Luna*, 577 U.S. 7, 12–14 (2015) (further instructing federal courts considering a qualified immunity defense to consider "whether the violative nature of the *particular* conduct is clearly established"). "For qualified-immunity purposes, clearly established rights are derived either from binding Supreme Court and Third Circuit precedent or from a robust consensus of

cases of persuasive authority in the Courts of Appeals." *James v. N.J. State Pol.*, 857 F.3d 165, 170 (3d Cir. 2020).

Here, for the reasons set out above in Part III.A, the Complaint does not state a claim that Defendants Atwood and Revell violated Plaintiff's substantive due process rights. And for that reason alone, these Defendants are entitled to qualified immunity. *See, e.g., Ye v. United States*, 484 F.3d 634, 638, 643 & n.6 (3d Cir. 2007) (holding that government doctor was entitled to qualified immunity on state-created danger claim where such claim failed for lack of an actionable affirmative act). But even if Defendants Atwood and Revell's actions did violate the Plaintiff's substantive due process rights, the claim would still be barred as to these Defendants on the basis of qualified immunity, as there is no "binding Supreme Court and Third Circuit precedent" or "a robust consensus of cases of persuasive authority in the Courts of Appeals" that establish—"beyond debate"—that their conduct violated substantive due process. *James*, 857 F.3d at 170. On the contrary, and as set out above, the case law makes clear that the City Defendants' conduct was not a fairly direct cause of Plaintiff's harm, does not shock the conscience, and that Plaintiff does not belong to a discrete class of persons for whom the alleged danger was greater than to the general public—such that the first three elements, respectively, of a state-created danger claim are satisfied. Accordingly, Defendants Atwood and Revell are entitled to qualified immunity on Plaintiff's state-created-danger claim against them in their individual capacities (Count I).

**D.  <u>Plaintiff's Negligence Claim Against the City Defendants (Count IV) Is Barred by the Political Subdivision Tort Claims Act.</u>**

Finally, Count IV of Plaintiff's Complaint asserts a state-law negligence claim against the City Defendants, based on the same alleged general failures in overseeing the Program on the

part of the City discussed above. *See* Compl. ¶¶ 88–94. This claim should be dismissed as to the City Defendants, because Pennsylvania law immunizes them from liability for it.

The tort liability of the City of Philadelphia and its employees is governed and limited by the Political Subdivision Tort Claims Act ("Tort Claims Act"), 42 Pa. Cons. Stat. Ann. §§ 8541–8564. The Tort Claims Act provides municipalities with general immunity from tort liability under state law, with only a limited waiver of that statutory immunity for nine categories of negligence. 42 Pa. Cons. Stat. Ann. §§ 8541, 8542. That waiver of immunity applies only to negligence claims arising out of vehicle liability; care custody or control of personal property; real property; trees, traffic controls, and street lighting; utility service facilities; streets; sidewalks; care custody and control of animals; and sexual abuse of minors. *Id.* § 8542(b)(1)–(9).

The Tort Claims Act thus immunizes the City and its officials from liability for a claim raising *any other* negligence theory of tort liability. *See, e.g.*, *Gale v. City of Phila.*, 86 A.3d 318, 320 (Pa. Commw. Ct. 2014) (providing that a "plaintiff must establish that 'the injury was caused by the negligent acts of a local agency or an employee thereof acting within the scope of his office or duties *with respect to one of the categories listed in subsection (b)*" of § 8542 (emphasis added)). And "[b]ecause of the [Legislature's] clear intent to insulate government from exposure to tort liability, the exceptions to immunity [set out in § 8542(b)(1)–(9)] are to be strictly construed." *Lockwood v. City of Pittsburgh*, 751 A.2d 1136, 1139 (Pa. 2000).

Applying these rules to Plaintiff's negligence claim against the City Defendants (Count IV), the claim fails because it does not fall into one of the Tort Claims Act's enumerated exceptions to immunity. *See* 42 Pa. Cons. Stat. Ann. § 8542(b)(1)–(9). Rather, Plaintiff's negligence claim is premised on the theory that—in sum—the City Defendants negligently administered the Program.

14

*See* Compl. ¶ 89. Specifically, Plaintiff claims that the City Defendants were negligent in the following ways:

- Hiring individuals known to pose a danger to the general public;
- failing to have reasonable hiring measures in place;
- failing [to] perform background checks on employees;
- allowing employees with known criminal history to carry a firearm;
- providing a firearm to employees with known criminal history and/or violent propensities;
- negligent hiring practices;
- failing to uphold its duty to the general public;
- failing to properly train employees in conflict de-escalation;
- disregarding the rights and safety of the Plaintiff;
- negligence per se; and
- in being otherwise careless, reckless and negligent, the particulars of which are presently unknown to plaintiff, but which may be learned by discovery . . .

*Id.* ¶ 89(a)–(k).

It is clear that these alleged failures do not fit into any of the nine exceptions to immunity for negligence claims set out in the Tort Claims Act—as none of those exceptions concerns negligent hiring or training of Program advocates. Because there is no waiver of statutory immunity for the negligence claim asserted against the City Defendants in Count IV, the City Defendants are absolutely immune to the same, and Count IV should be dismissed as to them.

IV.     **<u>CONCLUSION</u>**

For the reasons set forth above, the Court should dismiss with prejudice Counts I, II, and IV of the Complaint as to the City Defendants.

Respectfully submitted,

Date: April 10, 2024

/s/ Adam R. Zurbriggen
Adam R. Zurbriggen
Deputy City Solicitor
Pa. Attorney ID No. 331169
City of Philadelphia Law Department
1515 Arch Street, 14th Floor
Philadelphia, PA 19102
215-683-5114 (Phone)
215-683-5397 (Fax)
adam.zurbriggen@phila.gov

*Attorney for City Defendants*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MARCEL BODDIE,** | : | |
| **Plaintiff,** | : | |
| | : | **Civil Action** |
| **v.** | : | **No. 24-1393** |
| | : | |
| **HENNY'S SPORTS BAR, et al.,** | : | |
| **Defendants.** | : | |
| | : | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the date below, the foregoing Motion to Dismiss was filed via the Court's electronic filing system and is available for viewing and downloading.

/s/ *Adam R. Zurbriggen*
Adam R. Zurbriggen
Deputy City Solicitor
Pa. Attorney ID No. 331169
City of Philadelphia Law Department
1515 Arch Street, 14th Floor
Philadelphia, PA 19102
215-683-5114 (Phone)
215-683-5397 (Fax)
adam.zurbriggen@phila.gov

Date: April 10, 2024