IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MARCEL BODDIE,** | : | CIVIL ACTION |
| *Plaintiff* | : | |
| | : | NO. 24-1393 |
| **v.** | : | |
| | : | |
| **HENNY'S SPORTS BAR,** *et al.* | : | |
| *Defendants* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                                                      AUGUST 1, 2024

# MEMORANDUM OPINION

**INTRODUCTION**

      While a patron at Henny's Sports Bar, Plaintiff Marcel Boddie ("Plaintiff") was shot when a Community Crisis Intervention Program advocate engaged in an armed altercation with another bar patron and used Plaintiff as a human shield.  In his operative complaint, Plaintiff seeks damages for his injuries, pursuant to 42 U.S.C. § 1983, from the City of Philadelphia, various city officials and private individuals.  Specifically, Plaintiff alleges that the City of Philadelphia (the "City") and City employees, Erica Atwood and Shondell Revell (collectively, the "City Defendants"), violated his Fourth and Fourteenth Amendment rights by creating, implementing, and supervising a program that sent individuals with criminal/violent convictions, who lack in mediation or de-escalation training, into well-known high-crime areas to serve as "violence interrupters."  Plaintiff asserts claims against the City Defendants under the state-created danger theory of liability (Count I), *Monell* (Count II), and negligence (Count IV).

      Before this Court is the City Defendants' motion to dismiss filed pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6), (ECF 20), which Plaintiff has opposed, (ECF 21).  The issues

raised in the motion are fully briefed and, therefore, ripe for disposition. For the reasons set forth herein, the City Defendants' motion to dismiss is granted, *in part*, and denied, *in part*.

**BACKGROUND**

When deciding a Rule 12(b)(6) motion, a court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). Here, the facts relevant to the instant motion, as gleaned from the operative complaint, are summarized as follows:

> In 2018, the City of Philadelphia (the "City") established the Community Crisis Intervention Program (the "CCIP") to reduce violence in Philadelphia's most dangerous neighborhoods. The program, funded by the City, solicits and employs individuals with prior criminal convictions, including violent offenders, to patrol city streets and prevent violent crimes.
>
> The CCIP coordinates with the Philadelphia Police Department (the "PPD") to aid the CCIP's objective of reducing violent crime. The CCIP and the PPD work together and the City uses daily shooting reports supplied by the PPD to direct and control the activities, placement, and location of CCIP advocates.
>
> The CCIP is overseen by Shondell Revell ("Defendant Revell") of the City's Office of Violence Prevention, and Erica Atwood ("Defendant Atwood") of the City's Office of Policy and Strategic Initiatives for Criminal Justice. Defendants Revell and Atwood are directly responsible for the oversight, staffing, and funding of the CCIP. The City also contracts with the Philadelphia Anti-Drug/Anti-Violence Network ("PAAN") and/or the Urban Affairs Coalition ("UAC") to manage the operation of the CCIP. (Am. Compl., ECF 17, at ¶ 32).
>
> In 2019, UAC and/or PAAN hired Defendant Antonio Jardine ("Jardine") as a CCIP advocate. Jardine was tasked with intervening in violent altercations in the City's most violent neighborhoods as a "violence interrupter." (*Id.* at ¶ 47). At the time Jardine was hired, the City was aware of Jardine's violent criminal history, which included prior firearm offenses. Jardine and the other "violence interrupters" received no training in mediation, de-escalation, or violence prevention. (*Id.* at ¶¶ 44(d), 55).
>
> At some point during his employment, Jardine began "exhibiting erratic behavior." (*Id.* at ¶ 48). On April 29, 2022, Haneef Bailey ("Bailey"), Jardine's CCIP advocate partner, raised concerns to the City about working with Jardine. The following day, Bailey refused to work alongside Jardine, signing out of his shift immediately after signing in. Later that evening, Jardine was on duty as a

CCIP advocate, patrolling the streets of Philadelphia. During his shift, and while "wearing his PAAN provided attire and driving his PAAN/City provided vehicle," Jardine drove to Henny's Sports Bar and went inside, armed with a firearm.[1] (*Id.* at ¶ 53). When Jardine entered, Plaintiff was a "business invitee" at Henny's Sports Bar. (*Id.* at ¶ 51).

While inside the bar, Jardine became involved in an altercation with another individual that quickly turned violent. Plaintiff, a patron, attempted to de-escalate the altercation when Jardine and the other individual involved in the altercation brandished their firearms. Suddenly, Jardine grabbed Plaintiff and pulled Plaintiff in front of him. Using Plaintiff as a human shield, Jardine began discharging his firearm at the other individual. Plaintiff was hit by the returning gunfire, resulting in, *inter alia*, gunshot wounds, comminuted fractures of the radial head, radial diaphysis, and distal ulnar diaphysis which required surgery resulting in skin discoloration, permanent scarring, nerve damage, and musculoskeletal injuries.

In August 2022, the American Institutes for Research published a report (the "Report") commissioned by the City, detailing the failures of the City in its "administration, management, oversight[,] and operation of the CCIP," (*Id.* at ¶ 42), and the failures of the CCIP, including that CCIP advocates "did not receive training, or received inadequate training in areas including violence prevention, crisis intervention, and violence interruption," (*Id.* at ¶ 44(d)).

**LEGAL STANDARD**

When considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court "must accept all of the complaint's well-pleaded facts as true but may disregard any legal conclusions." *Fowler*, 578 F.3d at 210–11. The court must determine "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). The complaint must do more than merely allege the plaintiff's entitlement to relief; it must "show such an entitlement with its facts." *Id.* (internal quotation marks and citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R.

---

[1] The amended complaint contains no allegation with respect to whether the City provided Jardine a firearm or was aware that he carried one.

Civ. P. 8(a)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id.* To survive a motion to dismiss under Rule 12(b)(6), "a plaintiff must allege facts sufficient to 'nudge his or her claims across the line from conceivable to plausible.'" *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 570).

**DISCUSSION**

City Defendants moved to dismiss Counts I, II and IV of the amended operative complaint. Specifically, at Count I of the operative complaint, Plaintiff asserts a § 1983 claim against the City Defendants premised on the state-created danger theory of liability. Plaintiff alleges that the City Defendants' creation, implementation, and oversight of the CCIP, an organization that knowingly places individuals with prior violent criminal convictions into at-risk neighborhoods to serve as "violence interrupters," violated Plaintiff's rights under the Fourth and Fourteenth Amendments. At Count II, Plaintiff asserts *Monell* claims against the City Defendants for their failure to properly train, oversee, and discipline CCIP advocates, including Jardine, in connection with their duties as "violence interrupters." And at Count IV, Plaintiff asserts a negligence claim against the City Defendants.

As to the negligence claim (Count IV), City Defendants argue they are immune from liability under the Political Subdivision Tort Claims Act, (the "PSTCA"). (Def.s' Mem., ECF 20, at p. 14). In his response, Plaintiff concedes that the negligence claim should be dismissed as barred by the PSTCA. (Pl.'s Resp., ECF 21, at p. 14). Accordingly, Plaintiff's negligence claim (Count IV) is dismissed.

4

The City Defendants also move to dismiss Count I and Count II, on the basis that Plaintiff has failed to satisfy the elements of a state-created danger theory of liability at Count I and the requirements for municipal liability at Count II. Each argument will be addressed below.

### *Plaintiff's State-Created Danger Theory of Liability Claims (Count I)*

The Fourteenth Amendment of the United States Constitution provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV § 1. The United States Supreme Court (the "Supreme Court"), however, has held that individuals have "no affirmative right to governmental aid" under the Fourteenth Amendment. *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989) ("[T]he Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive an individual."). Generally, courts have recognized that the purpose of the Due Process Clause is to "protect people from the State, not to ensure that the State protect[s] [the people] from each other." *Id.* Notwithstanding, the Supreme Court has noted that a "special relationship" between the state and a private individual may lead to an affirmative governmental duty to protect which arises from "the State's affirmative act of restraining the individual's freedom to act on his own behalf—through incarceration, institutionalization, or other similar restraint of personal liberty." *Id.* at 200.

Relying on the Supreme Court's decision in *DeShaney*, the United States Court of Appeals for the Third Circuit (the "Third Circuit") adopted a "state-created danger" exception or theory of liability to allow individuals to bring substantive due process claims under § 1983 for injuries caused by others. *Bright v. Westmoreland Cnty.*, 443 F.3d 276, 281 (3d Cir. 2006). However, to assert a viable state-created danger claim, a plaintiff must plead facts sufficient to plausibly show:

> (1) the harm ultimately caused was foreseeable and fairly direct;
> (2) a state actor acted with a degree of culpability that shocks the conscience;
> (3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and
> (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*Id.* A failure to plead any one of these elements will result in the dismissal of the claim. *See Phillips*, 515 F.3d at 236 (affirming dismissal of state-created danger claim when plaintiff failed to sufficiently allege one of the elements). Here, the City Defendants move to dismiss Count I of the amended complaint on the grounds that Plaintiff has failed to establish the first, second, and third elements necessary to sustain a state-created danger theory of liability.

1.  *Foreseeable and Fairly Direct Harm*

The first element of the state-created danger theory of liability requires that "the harm ultimately caused was a foreseeable and a fairly direct result of the state's actions." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 908 (3d Cir. 1997). To sufficiently plead foreseeability, a plaintiff must "allege an awareness on the part of the state actors that rises to [the] level of actual knowledge or an awareness of risk that is sufficiently concrete to put the actors on notice of the harm." *Phillips*, 515 F.3d at 238. A "direct causal connection" must exist between the ultimate harm "and any of [the] defendants' allegedly improper acts." *Morse*, 132 F.3d at 909.

Here, City Defendants move to dismiss Plaintiff's state-created danger claim on the grounds that the ultimate harm — Plaintiff being shot by another bar patron while being used as a human shield by a CCIP advocate (Jardine) — was neither foreseeable nor a fairly direct result of any alleged conduct by the City Defendants because it was too attenuated from the creation,

6

implementation, and oversight of the CCIP.  This Court agrees that the harm ultimately suffered (*i.e.*, Plaintiff being used as a human shield and shot by another bar patron) was neither foreseeable nor a fairly direct result of any alleged conduct of the City Defendants in the creation, implementation, or oversight of the CCIP.  Thus, Plaintiff has not met this first element.

Notwithstanding, Plaintiff argues that by "knowingly solicit[ing] violent criminals and plac[ing] them in positions of . . . authority" in violent neighborhoods as part of the City-run CCIP program, the City Defendants "created a foreseeable danger to individuals in the same position as Plaintiff," making Jardine's use of Plaintiff as a human shield in a gunfight with another bar patron and Plaintiff's ultimate injury foreseeable.  (Am. Compl., ECF 17, at ¶¶ 74–75, 77).  Plaintiff further argues that the City was aware that Jardine "had a history of violent crimes including . . . firearm offenses" when it hired Jardine to work at the CCIP.  (*Id.* at ¶ 46).  Plaintiff contends that the City "became aware that Jardine was exhibiting erratic behavior" before the shooting, and again when his partner "expressed concern" on the morning of the alleged incident and declined to work with him.  (*Id.* at ¶¶ 48, 50).  While these facts alleged may support the foreseeability of Jardine's actions, these facts do not support the foreseeability of what actually occurred, *i.e.*, a random bar patron shooting Plaintiff, nor do they contain facts to support the foreseeability of the bar patron's actions.  As such, Plaintiff has not alleged facts sufficient to plausibly show the requisite foreseeability of the "harm ultimately caused," *i.e.*, Plaintiff being shot by another bar patron.

Plaintiff's amended complaint also fails to allege facts sufficient to plausibly show that the ultimate harm (being shot) had a "direct causal connection" to the City Defendants' alleged creation, implementation, and oversight of the CCIP.  *See Phillips*, 515 F.3d at 239 ("[T]he complaint must also allege that the attack or harm is a 'fairly direct' result of the defendant's acts.").

Specifically, Plaintiff alleges that he was shot by the oncoming gunfire of a random bar patron after intervening in a conflict between said other bar patron and Jardine. (Am. Compl., ECF 17, at ¶ 66, 77); (Pl.'s Opp., ECF 21, at p. 4) ("The other individual returned fire, resulting in Marcel Boddie sustaining gunshot wounds and severe injuries."). As noted, the ultimate harm suffered resulted from Plaintiff being shot. As alleged in the amended complaint, the only actions having a direct causal connection to Plaintiff's gunshot wounds are those actions of the random bar patron and, arguably, though more remotely, Jardine. The City Defendants' alleged actions — creating a program and hiring individuals like Jardine who had prior violent histories — is too attenuated from the ultimate harm suffered to be a direct cause. *See Morse*, 132 F.3d at 909 (holding that "defendants, as a matter of law, could not have foreseen that allowing construction workers to use an unlocked back entrance for access to [a] school building would result in the murderous act of a mentally unstable *third party*, and that the tragic harm which ultimately befell [victim] was too attenuated from defendants' actions to support liability" (emphasis added)); *LaGuardia v. Ross Twp.*, 705 F. App'x 130, 133 (3d Cir. 2017) (holding that harm was not "fairly direct consequence of *[d]efendants' actions*" because plaintiffs who were attendees of a township meeting when an individual committed a mass shooting were "random individuals who happened to be in the path of danger" (emphasis added) (internal quotation marks and citations omitted)). As noted by the Third Circuit, "a distinction exists between harm that occurs to an identifiable or discrete individual under the circumstances and harm that occurs to a 'random' individual with no connection to the harm-causing party." *Phillips*, 515 F.3d at 239. Here, like the plaintiff in *Phillips*, Plaintiff was a random individual at a bar with no alleged connection to either the other random bar patron who shot Plaintiff or Jardine. As such, Plaintiff has failed to allege facts sufficient to meet the first element of a state-created danger claim.

2. *Foreseeable Victim or Member of Discrete Class of Foreseeable Victims*

The City Defendants also move to dismiss Plaintiff's state-created danger claim on the grounds that Plaintiff has not alleged facts sufficient to satisfy the third element of the state-created danger exception. The third element "asks whether there existed some relationship between the state and the plaintiff." *Morse*, 132 F.3d at 912 (internal quotation marks omitted). This requirement "contemplates some contact [between the state and the plaintiff] such that the plaintiff was a foreseeable victim of the defendant's acts in a tort sense." *Id.* (quoting *Kneipp by Cusack v. Tedder*, 95 F.3d 1199, 1209, n.22 (3d Cir. 1996)). "The relationship may exist when the defendant has knowledge that either (1) 'a specific individual has been placed in harm's way' or (2) the plaintiff 'is part of an identifiable and discrete class of persons subject to the harm the state allegedly has created.'" *Hopkins v. Yesser*, 412 F. Supp. 3d 517, 523 (E.D. Pa. 2019) (quoting *Morse*, 132 F.3d at 914). "Where the state actor has allegedly created a danger towards the public generally, rather than an individual or group of individuals, holding a state actor liable for the injuries of foreseeable plaintiffs would expand the scope of the state-created danger theory beyond its useful and intended limits." *Morse*, 132 F.3d at 913 n.12. "Foreseeability alone . . . is not sufficient to establish a discrete class; the plaintiff must be part of "a *limited group* of potential plaintiffs." *Crockett v. Se. Pa. Transp. Ass'n*, 2013 WL 2983117, at *6 (E.D. Pa. June 14, 2013), *aff'd sub nom.*, 591 F. App'x. 65 (3d Cir. 2015) (quoting *Morse*, 132 F.3d at 913 n.12). The plaintiff must allege facts showing a class that is "limited in both time and scope." *Id.* (quoting *Buchanan-Moore v. Cnty. Of Milwaukee*, 570 F.3d 824, 828 (7d Cir. 2009)).

Plaintiff contends that he falls within the requisite identifiable and discreet class of persons on account of his status as "an occupant of the bar" in the vicinity where Jardine was directed to patrol. (Am. Compl., ECF 17, at ¶ 76). Plaintiff's contention, however, stretches the limits of this

element. Under Plaintiff's argument, any patron of the bar — which was open to the public at large — or any other person in the vicinity of the area that Jardine was directed to patrol would be deemed a foreseeable victim of the City Defendants' creation, implementation, and oversight of the CCIP. Courts have repeatedly rejected this type of argument. As the Third Circuit has held, "[w]hen the alleged unlawful act is a policy directed at the public at large[,] . . . the rationale behind the rule disappears." *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1153 (3d Cir. 1995); *see also Long v. Cnty. of Armstrong*, 679 F. App'x. 221, 222, 224 & n.5 (3d Cir. 2017) (finding that a woman killed by an escaped prisoner was not "part of a limited, discrete class" of residents who lived within "eyeshot" or "the immediate vicinity of the jail" because these limits could not distinguish the class from the "public at large" (internal quotation marks and citations omitted)); *Crockett*, 2013 WL 2983117, at *8 (rejecting argument that SEPTA train riders on a particular track were distinguishable from "millions of passengers [who] ride SEPTA's regional rail system each year"); *Martinez v. California*, 444 U.S. 277, 279, 285, (1980) (finding that teenage girl killed after parole board recommended the release of a sex offender did not "face[] any special danger . . . as distinguished from the *public at large*" (emphasis added)). As in these cases, Plaintiff's alleged facts merely place him within the public-at-large rather than within the requisite discrete class.

Plaintiff also fails to allege any facts to support the existence of any relationship or contact between the City Defendants and Plaintiff or any facts to support a relationship between Jardine and Plaintiff and knowledge of such relationship by the City Defendants. In the absence of such factual allegations, Plaintiff cannot meet the third element. *See Long*, 679 F. Appx. at 223 (affirming dismissal of state-created danger claim where there were no factual allegations to

support any contact between the state and the plaintiff or any relationship between the murderer and the victim and the state's knowledge of such relationship).

Because Plaintiff's state-created danger claim fails to meet the first and third elements, Plaintiff has failed to assert a viable state-created danger claim. As such, this Court need not and will not address the remaining two elements of state-created danger. Accordingly, the City Defendants' motion to dismiss Count I of the amended complaint is granted.

### *Plaintiff's Municipal Liability Claims (Count II)*

At Count II of the amended complaint, Plaintiff asserts a *Monell* claim based on the City Defendants' failure to "train, oversee[,] and/or discipline CCIP advocates." (Am. Compl., ECF 17, at ¶ 86). The City Defendants move to dismiss Plaintiff's failure to train claims on the basis that Plaintiff has failed to allege facts sufficient to plausibly show either a deliberate indifference or that the policy/failure to train was the moving force behind the alleged violation of Plaintiff's constitutional rights.[2]

Specifically, City Defendants argue that because Plaintiff sued Defendants Atwood and Revell in their official capacities along with the City, the motion to dismiss the *Monell* claims against Atwood and Revell should be granted because, in essence, the City and Defendants Atwood and Revell are "in fact one defendant."[3] This Court agrees. Accordingly, all *Monell*

---

[2] Though the amended complaint alleges claims based on the failure to train, oversee, and discipline, (*see* Am. Compl., ECF 17, at ¶ 86), the City Defendants direct the arguments in their motion to dismiss solely at the alleged failure to train.

[3] Plaintiff asserts this *Monell* claim against Defendants Atwood and Revell in their official capacities. (*See* Am. Compl., ECF 17, at p. 11). Defendants Atwood and Revell argue that because Plaintiff has brought a *Monell* claim against Defendant City, his § 1983 claims against Defendants Atwood and Revell, in their official capacities, should be dismissed. Plaintiff has not responded to this argument. Nevertheless, this Court agrees with Defendants. *See Murphy v. Doe Police Detective #1*, 2021 WL 4399646, at *5 (E.D. Pa. Sept. 27, 2021) (explaining that because plaintiff asserted claims against defendant supervisor of Philadelphia Police Department, "[t]hese claims must be treated as against the municipal

claims against Defendants Atwood and Revell in their official capacities are dismissed. City Defendants' argument as it pertains to the City is, however, unpersuasive.

As to the City, a municipality, like the City, cannot be held liable for the unconstitutional acts of its employees on a theory of *respondeat superior*. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). Generally, a municipality can only be held liable under § 1983 where the alleged violation of the plaintiff's constitutional rights was caused by either a policy or custom of the municipality. *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996). Thus, to state a viable claim for municipal liability under § 1983, a plaintiff must plead facts sufficient to plausibly show (1) a constitutional violation by a municipal actor (2) that was caused by a municipal policy and/or custom. *Monell*, 436 U.S. at 694. "Policy is made when a decisionmaker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." *Berg v. Cnty. of Allegheny*, 219 F.3d 261, 275 (3d Cir. 2000) (internal quotation marks and citations omitted). "Customs are 'practices of state officials . . . so permanent and well settled as to virtually constitute law.'" *Id.* (quoting *Monell*, 436 U.S. at 691).

The United States Supreme Court (the "Supreme Court") has repeatedly recognized that "[i]n limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). The Third Circuit has, in turn, treated claims for failure to train, supervise, and discipline under the same legal rubric. *See Est. of Roman v. City of Newark*, 914 F.3d 789, 799 n.7 (3d Cir. 2019) ("We consider allegations of failure to train, supervise, and discipline together because they fall under the same

---

entity"); *Lopez v. Maczko*, 2007 WL 2461709, at *7 (E.D. Pa. Aug. 16, 2007) (holding that because plaintiff named the commissioner in his official capacity and the City as defendants, "they are in fact one defendant" and the motion to dismiss claims against commissioner "in his official capacity [would] be granted"). Thus, all claims against Defendants Atwood and Revell in their official capacities are dismissed.

species of municipal liability."). To satisfy the requirements of § 1983 and *Monell*, a municipality's failure to train, supervise, or discipline its employees in a relevant respect must amount to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *Connick*, 563 U.S. at 61 (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)); *see also Thomas v. Cumberland Cnty.*, 749 F.3d 217, 222 (3d Cir. 2014) ("Where the policy concerns a failure to train or supervise municipal employees, liability under section 1983 requires a showing that the failure amounts to deliberate indifference to the rights of persons with whom those employees will come into contact." (internal quotation marks and citations omitted)). "Only then 'can such a shortcoming be properly thought of as a city policy or custom that is actionable under § 1983.'" *Connick*, 563 U.S. at 61 (quoting *Canton*, 489 U.S. at 389). In addition, "the identified deficiency in a city's training program must be closely related to the ultimate injury;' or in other words, 'the deficiency in training must have actually caused' the constitutional violation." *Thomas*, 749 F.3d at 222 (quoting *Canton*, 489 U.S. at 391).

"[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick*, 563 U.S. at 61 . (internal quotation marks and citations omitted). This standard may be met "when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights . . . ." *Id.* A municipality's "'policy of inaction' in light of notice that its program will cause constitutional violations 'is the functional equivalent of a decision by the city itself to violate the Constitution.'" *Id.* at 61-62 (quoting *Canton*, 489 U.S. at 395 (O'Connor, J., concurring in part and dissenting in part)).

Ordinarily, a plaintiff must allege "a pattern of similar constitutional violations by untrained employees . . . to demonstrate deliberate indifference for purposes of failure to train."

*Id.* at 62. "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id.* "A pattern of violations puts municipal decisionmakers on notice that a new program is necessary, and 'their continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the deliberate indifference—necessary to trigger municipal liability.'" *Thomas*, 749 F.3d at 223 (quoting *Bd. of Cnty. Comm'rs. v. Brown*, 520 U.S. 397, 407 (1997)).

The Supreme Court, however, has recognized that in some instances, "a pattern of similar violations might not be necessary to show deliberate indifference" in a failure to train claim. *Connick*, 563 U.S. at 63. In these limited circumstances, "the need for training 'can be said to be so obvious, that failure to do so could properly be characterized as deliberate indifference to constitutional rights' even without a pattern of constitutional violations." *Thomas*, 749 F.3d at 223 (quoting *Canton*, 489 U.S. at 390 n.10). The Third Circuit summarized the Supreme Court's hypothetical example of a viable "single incident" failure to train claim as follows:

> Because city policymakers know to a moral certainty that their police officers will be required to arrest fleeing felons, if the city arms the officers with firearms, the need to train officers in the constitutional limitations on the use of deadly force" is so obvious that a failure to provide such training could provide a basis for single-incident municipal liability. Liability in single-incident cases depends on the likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens rights.

*Id.* 223–24 (internal quotation marks and citations omitted).

Applying the above-described "single incident" law, the Third Circuit has held that a municipality's failure to provide its employees with de-escalation training amounted to deliberate

14

indifference to the plaintiff's constitutional rights. In *Thomas*, a pretrial detainee was being held in a "tough prison" and found himself in conflict with other inmates, which led to a violent attack. *Id.* at 220. The correctional officers at the facility, who were untrained in de-escalation, failed to intervene and de-escalate the situation, and the inmate suffered serious injuries. *Id.* at 221. Despite the lack of similar, prior constitutional violations, the Third Circuit held that "[a] reasonable jury could conclude based on the frequency of fights and the volatile nature of the prison that the predictability that an officer lacking de-escalation and intervention training to handle that situation will violate rights and the likelihood that the situation will recur demonstrate deliberate indifference on the County's part." *Id.* at 225 (internal quotation marks and citation omitted). Additionally, the court reasoned that "the high degree of predictability in a single-incident case may support the inference of causation" and held that a jury could find the failure to train correctional officers in de-escalation contributed to the inmate's injuries. *Id.* at 226 (internal quotation marks and citations omitted).

Though *Thomas* was decided at the summary judgment stage and with the benefit of evidence, this Court finds the Third Circuit's decision and reasoning in *Thomas* apply equally here. In this case, Plaintiff alleges facts showing that the City implemented a program/policy, *i.e.*, the CCIP, and knowingly hired convicted violent felons (including those with firearm offenses) to serve as "violence interrupters" in Philadelphia's high crime neighborhoods, with the very aim of reducing violence in those neighborhoods. Despite hiring these individuals (convicted violent felons) to serve as "violence interrupters," Plaintiff alleges that the City provided them with no training in community re-entry, conflict resolution, mediation, and/or de-escalation. In light of the alleged purpose of this program/policy, *i.e.*, to reduce violence in Philadelphia's most violent communities, it was reasonably predictable that the "violence interrupters" would frequently and

repeatedly confront violent situations.  Indeed, that is precisely what they were hired to do.  It is equally predictable that in the absence of any training in conflict resolution, mediation, and/or de-escalation that these "violence interrupters" would not know how to properly handle the situation and would violate the rights of those with whom they come into contact when confronting a predictable violent situation.

As such, this Court finds that Plaintiff has pled sufficient fact to plausibly assert a *Monell* claim against the City, specifically that the City failed to train CCIP advocates (like Jardine) in community re-entry, conflict resolution, mediation, and/or de-escalation satisfying the pleading standard for deliberate indifference when considering the frequency with which these "violence interrupters" could reasonably be expected to confront violent altercations and the likelihood that the failure to train these "violence interrupters" would result in constitutional violations.

The City also argues that Plaintiff has failed to allege facts sufficient to show that the City's policy of failing to train CCIP advocates, such as Jardine, caused Plaintiff's injuries.  In support, the City merely contends that Plaintiff has not alleged any specific training that could have prevented Jardine's act of using Plaintiff as a human shield when confronted with the violent situation.  This argument is also unpersuasive.[4]  As noted above, "to sustain a claim based on a failure to train theory, 'the identified deficiency in the training program must be closely related to the ultimate constitutional injury.'"  *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1028 (3d Cir. 1991) (quoting *Canton*, 489 U.S. at 391).  The failure to train must have "a causal nexus with [the plaintiff's] injury."  *Id.* at 1030.  In analyzing the causation requirement, "the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform."

---

[4]    In support of his argument, Plaintiff also submitted an independent report of the American Institutes for Research attached to his amended complaint, issues within days of the shooting incident, which concluded that the CCIP advocates had not been provided any or adequate training in "violence prevention best practices, crisis intervention, or violence interruption."  (Report, ECF 17-1, at p. 7).

*Canton*, 489 U.S. at 390. Municipal liability cannot rest on a mere showing that the employees "could have been better trained or that additional training was available that would have reduced the overall risk of constitutional injury." *Colburn*, 946 F.2d at 1029–30. Rather, the inquiry must focus on whether "the injury [could] have been avoided had the employee been trained under a program that was not deficient in the identified respect[.]" *Canton*, 489 U.S. at 391.

As the Third Circuit recognized in *Thomas*, however,

> The high degree of predictability in a single-incident case may also support an inference of causation—that the municipality's indifference led directly to the very consequence that was so predictable. The causation inquiry—predicting how a hypothetically well-trained officer would have acted under the circumstances—may not be an easy task for the factfinder, particularly since matters of judgment may be involved. Nonetheless, judge and jury, doing their respective jobs, will be adequate to the task.

*Thomas*, 749 F.3d at 226 (internal quotation marks and citations omitted).

As set forth above, accepting Plaintiff's factual allegations as true, as this Court must at this stage of litigation, this Court finds that there existed a high degree of probability that the City's "violence interrupters," like Jardine, would frequently and repeatedly face violent situations. Since the "violence interrupters" were tasked with de-escalating these predictable violent situations, this Court finds that Plaintiff's factual allegations equally support the requisite causation for a *Monell* claim.

In sum, at this stage of litigation, Plaintiff has plead facts sufficient to plausibly show that the City failed to provide adequate de-escalation training to its CCIP advocates despite the high frequency with which they would be expected to confront violent altercations as "violence interrupters" and that the alleged training deficiencies caused Plaintiff's injury. As such, Plaintiff has satisfied the pleading requirements for a *Monell* claim. Accordingly, the City's motion to

dismiss Count II of the amended complaint is denied with respect to the municipal liability claim asserted against the City.

**CONCLUSION**

For the reasons set forth, (1) the City Defendants' motion to dismiss Count I (state-created danger claims) is granted; (2) the City Defendants' motion to dismiss Count II (*Monell* claims) is granted as to Defendants Atwood and Revell, (*see supra* p. 11 n. 3), and denied as to the City; and (3) the City Defendants' motion to dismiss Count IV (negligence claims) is granted.  An Order consistent with this Memorandum Opinion follows.

*NITZA I. QUIÑONES ALEJANDRO*, J.