## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MARCEL BODDIE,** | : | **CIVIL ACTION** |
| *Plaintiff* | : | |
| | : | **NO. 24-1393** |
| **v.** | : | |
| | : | |
| **HENNY'S SPORTS BAR,** *et al.* | : | |
| *Defendants* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                                                  JANUARY 8, 2025

## MEMORANDUM OPINION

**INTRODUCTION**

  While a patron at Henny's Sports Bar, Plaintiff Marcel Boddie ("Plaintiff") was shot when a Community Crisis Intervention Program (the "CCIP") advocate engaged in an armed altercation with another bar patron and used Plaintiff as a human shield. In his operative complaint, Plaintiff alleges that Defendants Urban Affairs Coalition, Philadelphia Anti-Drug Anti-Violence Network, and George Mosee, Jr. (collectively, the "PAAN Defendants"), who are alleged to have been contracted by the City of Philadelphia to manage the CCIP, violated his due process rights by managing a program that knowingly sent individuals with criminal/violent convictions without any mediation or de-escalation training, into well-known, high-crime areas to serve as "violence interrupters." Plaintiff asserts his claims against the PAAN Defendants under the state-created danger theory of liability (Count I), *Monell* (Count II), and negligence (Count IV), and seeks damages for his injuries pursuant to 42 U.S.C. § 1983.

  Before this Court is the PAAN Defendants' motion to dismiss the amended complaint filed pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). (ECF 22). Plaintiff opposes the

motion. (ECF 23).[1] The issues raised in the motion to dismiss are fully briefed and, therefore, ripe for disposition. For the reasons set forth herein, the PAAN Defendants' motion to dismiss is granted.

**BACKGROUND**

When deciding a Rule 12(b)(6) motion, a court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). Here, the facts relevant to the motion, gleaned from the operative complaint, are summarized as follows:

> In 2018, the City of Philadelphia (the "City") established the CCIP to reduce violence in Philadelphia's most dangerous neighborhoods. The program, funded by the City, solicits and employs individuals with prior criminal convictions, including violent offenders, to patrol city streets and prevent violent crimes. The CCIP coordinates with the Philadelphia Police Department (the "PPD") to aid the CCIP's objective of reducing violent crime. The CCIP and the PPD work together, and the City uses daily shooting reports supplied by the PPD to direct and control the activities, placement, and location of CCIP advocates.
>
> The CCIP is overseen by Defendants Shondell Revell ("Revell") of the City's Office of Violence Prevention, and Erica Atwood ("Atwood") of the City's Office of Policy and Strategic Initiatives for Criminal Justice. Revell and Atwood are responsible for the oversight, staffing, and funding of the CCIP. The City also contracts with the Philadelphia Anti-Drug/Anti-Violence Network ("Defendant PAAN") and/or the Urban Affairs Coalition ("Defendant UAC") to manage the operation of the CCIP. Defendant George Mosee, Jr. ("Defendant Mosee") serves as the Executive Director of Defendants PAAN and/or UAC.
>
> In 2019, Defendants UAC and/or PAAN hired Defendant Antonio Jardine ("Jardine") as a CCIP advocate. Jardine was tasked with intervening in violent altercations in the City's most violent neighborhoods as a "violence interrupter." When Jardine was hired, Defendants UAC and PAAN were aware of his violent criminal history, which included convictions for firearm offenses. Jardine and other "violence interrupters" received no training in mediation, de-escalation, or violence prevention.
>
> At some point during Jardine's employment, Defendants UAC and PAAN became aware that Jardine was exhibiting erratic behavior. Specifically, on April

---

[1] Plaintiff's claims against the other named defendants are not the subject of this opinion.

29, 2022, Haneef Bailey ("Bailey"), Jardine's CCIP advocate partner, raised concerns to Defendants UAC and PAAN about working with Jardine. The following day, Bailey refused to work alongside Jardine, signing out of his shift immediately after signing in. Later that evening, Jardine was on duty as a CCIP advocate, patrolling the streets of Philadelphia. During his shift, and while wearing his PAAN provided attire and driving a PAAN provided vehicle, Jardine drove to Henny's Sports Bar and went inside, armed with a firearm.[2] Plaintiff was inside Henny's Sports Bar when Jardine entered.

While inside the bar, Jardine became involved in an altercation with another individual that quickly escalated and turned violent. Plaintiff, a bar patron, attempted to de-escalate the altercation when Jardine and the other individual involved in the altercation each brandished their firearms. Suddenly, Jardine grabbed Plaintiff and pulled Plaintiff in front of him. Using Plaintiff as a human shield, Jardine began discharging his firearm at the other individual. Plaintiff was hit by the returning gunfire, suffering, *inter alia*, comminuted fractures of the radial head, radial diaphysis, and distal ulnar diaphysis which required surgery resulting in skin discoloration, permanent scarring, nerve damage, and musculoskeletal injuries.

In August 2022, the American Institutes for Research published a report (the "Report") commissioned by the City, detailing the failures of Defendant PAAN and the City in their administration, management, oversight, and operation of the CCIP. Specifically, the Report provided, *inter alia*, that CCIP advocates did not receive training, or received inadequate training in areas including violence prevention, crisis intervention, and violence interruption.

**LEGAL STANDARD**

When considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court "must accept all of the complaint's well-pleaded facts as true but may disregard any legal conclusions." *Fowler*, 578 F.3d at 210–11. The court must determine "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). The complaint must do more than merely allege the plaintiff's entitlement to relief; it must "show such an entitlement with its facts." *Id.* (internal quotation marks and citations omitted). "[W]here the well-pleaded facts do not permit

---

[2] The amended complaint contains no allegation with respect to whether Defendants UAC and/or PAAN provided Jardine a firearm or was aware that he carried one.

the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id.* To survive a motion to dismiss under Rule 12(b)(6), "a plaintiff must allege facts sufficient to 'nudge his or her claims across the line from conceivable to plausible.'" *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 570).

**DISCUSSION**

Plaintiff assert two civil rights claims against the PAAN Defendants pursuant to 42 U.S.C. § 1983*; to wit*: at Count I — a state-created danger claim premised on the PAAN Defendants' alleged management of the CCIP, a program that knowingly placed individuals with prior violent criminal convictions into high-crime neighborhoods to serve as "violence interrupters;" and at Count II — a *Monell* claim premised on the alleged failure to properly train, oversee, and discipline CCIP advocates (including Jardine), in connection with their duties as "violence interrupters." The PAAN Defendants move to dismiss both claims. Defendant Mosee also seeks the dismissal of the negligence claim asserted against him at Count IV.[3] The parties' respective arguments with respect to these claims are addressed below.

---

[3] Though Defendants PAAN and UAC purport to seek the dismissal of all the claims asserted against them in the amended complaint, they provide no argument with respect to the negligence claim asserted against them at Count IV, (as opposed to Defendant Mosee). As such, Count IV against Defendants PAAN and UAC will proceed.

### *Plaintiff's State-Created Danger Claims*
### *Against the PAAN Defendants (Count I)*

The Fourteenth Amendment of the United States Constitution provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV § 1.  The United States Supreme Court (the "Supreme Court"), however, has held that individuals have "no affirmative right to governmental aid" under the Fourteenth Amendment.  *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989) ("[T]he Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive an individual.").  Courts have recognized that the purpose of the Due Process Clause is to "protect people from the State, not to ensure that the State protect[s] [the people] from each other."  *Id.*  Notwithstanding, the Supreme Court has noted that a "special relationship" between the state and a private individual may lead to an affirmative governmental duty to protect which arises from "the State's affirmative act of restraining the individual's freedom to act on his own behalf— through incarceration, institutionalization, or other similar restraint of personal liberty."  *Id.* at 200.

Relying on the Supreme Court's decision in *DeShaney*, the United States Court of Appeals for the Third Circuit (the "Third Circuit") adopted a "state-created danger" exception or theory of liability to allow individuals to bring substantive due process claims under § 1983 for injuries caused by others.  *Bright v. Westmoreland Cnty.*, 443 F.3d 276, 281 (3d Cir. 2006).  To assert a viable state-created danger claim, a plaintiff must plead facts sufficient to plausibly show the following elements:

> (1) the harm ultimately caused was foreseeable and fairly direct;
> (2) a state actor acted with a degree of culpability that shocks the conscience;
> (3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a

5

>       member of a discrete class of persons subjected to the potential harm
>       brought about by the state's actions, as opposed to a member of the
>       public in general; and
>       (4) a state actor affirmatively used his or her authority in a way that
>       created a danger to the citizen or that rendered the citizen more
>       vulnerable to danger than had the state not acted at all.

*Id.* A failure to plead any one of these elements will result in the dismissal of the claim. *See Phillips*, 515 F.3d at 236 (affirming dismissal of state-created danger claim when plaintiff failed to sufficiently allege one of the elements).

Here, the PAAN Defendants argue that Plaintiff has failed to establish the first, second, and third requisite elements. As set forth below, this Court agrees, *in part*, and finds that Plaintiff has failed to plead facts sufficient to support the requisite foreseeable and fairly direct harm and/or foreseeable victim required to satisfy the first and third elements. Therefore, this Court will limit its analysis to these elements. *See id.* (explaining plaintiff's failure to sufficiently plead the fourth element "obviates the need to analyze the other three elements.").

1. *Foreseeable and Fairly Direct Harm*

The first element of the state-created danger theory of liability requires that "the harm ultimately caused was a foreseeable and a fairly direct result of the state's actions." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 908 (3d Cir. 1997). To sufficiently plead foreseeability, a plaintiff must "allege an awareness on the part of the state actors that rises to [the] level of actual knowledge or an awareness of risk that is sufficiently concrete to put the actors on notice of the harm." *Phillips*, 515 F.3d at 238. A "direct causal connection" must exist between the ultimate harm "and any of [the] defendants' allegedly improper acts." *Morse*, 132 F.3d at 909.

Here, the PAAN Defendants move to dismiss Plaintiff's state-created danger claim on the grounds that the ultimate harm — Plaintiff being shot by another bar patron while being used as a human shield by a CCIP advocate (Jardine) — was neither foreseeable nor a fairly direct result of

6

any alleged conduct by the PAAN Defendants because it was too attenuated from their alleged management of the CCIP.  This Court agrees that the harm ultimately suffered (*i.e.*, Plaintiff being used as a human shield and shot by another bar patron) was neither foreseeable nor a fairly direct result of any alleged conduct of the PAAN Defendants in the management of the CCIP.  Thus, Plaintiff has not met his burden to plead facts sufficient to show this first element.

Nonetheless, Plaintiff contends that by "knowingly solicit[ing] violent criminals and plac[ing] them in positions of . . . authority" in known violent neighborhoods as part of the CCIP program, the PAAN Defendants "created a foreseeable danger to individuals in the same position as Plaintiff," making Jardine's use of Plaintiff as a human shield in a gunfight with another bar patron and Plaintiff's ultimate injury foreseeable.  (Am. Compl., ECF 17, at ¶¶ 74–75, 77).  In support of this foreseeable danger, Plaintiff alleges that Defendants UAC and/or PAAN knew that Jardine "had a history of violent crimes including . . . firearm offenses" when they hired Jardine to work at the CCIP.  (*Id.* at ¶ 46).  Plaintiff also alleges that Defendants UAC and PAAN "became aware that Jardine was exhibiting erratic behavior" before the shooting occurred and again when his partner "expressed concern" on the morning of the alleged incident and declined to work with him.  (*Id.* at ¶¶ 48, 50).  While these alleged facts may support Jardine's unusual behavior, these facts do not support the foreseeability of what actually occurred, *i.e.*, a random bar patron (not Jardine) shooting Plaintiff.  Moreover, the amended complaint contains no facts to support the foreseeability of the random bar patron's actions.  As such, Plaintiff has not alleged facts sufficient to plausibly show the requisite foreseeability of the "harm ultimately caused," *i.e.*, Plaintiff being shot by another bar patron (not Jardine).

Plaintiff's amended complaint also fails to allege facts sufficient to plausibly show that his ultimate harm (being shot) had a "direct causal connection" to the PAAN Defendants' management

7

of the CCIP.  *See Phillips*, 515 F.3d at 239 ("[T]he complaint must also allege that the attack or harm is a 'fairly direct' result of the defendant's acts.").  Plaintiff alleges that he was shot by the oncoming gunfire of a random bar patron (not Jardine) after intervening in a conflict between this random bar patron and Jardine.  (Am. Compl., ECF 17, at ¶¶ 66, 77); (Pl.'s Opp., ECF 21, at p. 4) ("The other individual returned fire, resulting in Marcel Boddie sustaining gunshot wounds and severe injuries.").  The ultimate harm resulted from Plaintiff's gunshot wounds.  As alleged in the amended complaint, the only actions having a direct causal connection to Plaintiff's gunshot wounds are those actions of the random bar patron and, arguably, though more remotely, those of Jardine.  The PAAN Defendants' alleged actions — managing a program and hiring individuals like Jardine who had prior violent histories — is too attenuated from the ultimate harm to be a direct cause.  *See Morse*, 132 F.3d at 909 (holding that "defendants, as a matter of law, could not have foreseen that allowing construction workers to use an unlocked back entrance for access to [a] school building would result in the murderous act of a mentally unstable *third party*, and that the tragic harm which ultimately befell [victim] was too attenuated from defendants' actions to support liability" (emphasis added)); *LaGuardia v. Ross Twp.*, 705 F. App'x 130, 133 (3d Cir. 2017) (holding that harm was not "fairly direct consequence of *[d]efendants' actions*" because plaintiffs who were attendees of a township meeting when an individual committed a mass shooting were "random individuals who happened to be in the path of danger" (emphasis added) (internal quotation marks and citations omitted).  As noted by the Third Circuit, "a distinction exists between harm that occurs to an identifiable or discrete individual under the circumstances and harm that occurs to a 'random' individual with no connection to the harm-causing party." *Phillips*, 515 F.3d at 239.  Here, like the plaintiff in *Phillips*, Plaintiff was a random individual at a bar with no alleged connection to either the other random bar patron who shot Plaintiff or Jardine.

As such, Plaintiff has failed to allege facts sufficient to meet the first element of a state-created danger claim. Having failed to plead sufficient facts to plausibly meet this first element of the state-created danger exception, is sufficient basis to grant PAAN Defendants' motion to dismiss.

    2. *Foreseeable Victim or Member of Discrete Class of Foreseeable Victims*

The PAAN Defendants also move to dismiss Plaintiff's state-created danger claim on the grounds that Plaintiff has not alleged facts sufficient to satisfy the third element of the state-created danger exception. The third element "asks whether there existed some relationship between the state and the plaintiff." *Morse*, 132 F.3d at 912 (internal quotation marks omitted). This requirement "contemplates some contact [between the state and the plaintiff] such that the plaintiff was a foreseeable victim of the defendant's acts in a tort sense." *Id.* (quoting *Kneipp v. Tedder*, 95 F.3d 1199, 1209, n.22 (3d Cir. 1996)). "The relationship may exist when the defendant has knowledge that either (1) 'a specific individual has been placed in harm's way' or (2) the plaintiff 'is part of an identifiable and discrete class of persons subject to the harm the state allegedly has created.'" *Hopkins v. Yesser*, 412 F. Supp. 3d 517, 523 (E.D. Pa. 2019) (quoting *Morse*, 132 F.3d at 914). However, "[w]here the state actor has allegedly created a danger towards the public generally, rather than an individual or group of individuals, holding a state actor liable for the injuries of foreseeable plaintiffs would expand the scope of the state-created danger theory beyond its useful and intended limits." *Morse*, 132 F.3d at 913 n.12. "Foreseeability alone . . . is not sufficient to establish a discrete class; the plaintiff must be part of 'a *limited group* of potential plaintiffs.'" *Crockett v. Se. Pa. Transp. Ass'n*, 2013 WL 2983117, at *6 (E.D. Pa. June 14, 2013), *aff'd sub nom.*, 591 F. App'x. 65 (3d Cir. 2015) (quoting *Morse*, 132 F.3d at 913 n.12). The plaintiff must allege facts showing a class that is "limited in both time and scope." *Id.* (quoting *Buchanan-Moore v. Cnty. of Milwaukee*, 570 F.3d 824, 828 (7d Cir. 2009)).

Plaintiff contends that he falls within the requisite identifiable and discreet class of persons on account of his status as "an occupant of the bar" in the vicinity where Jardine was directed to patrol. (Am. Compl., ECF 17, at ¶ 76). Plaintiff's contention, however, stretches the limits of this element. Under Plaintiff's argument, any patron of the bar — which was open to the public at large — or any other person in the vicinity of the area that Jardine was directed to patrol would be deemed a foreseeable victim of the PAAN Defendants' management of the CCIP. However, courts have repeatedly rejected this very argument. As the Third Circuit opined, "[w]hen the alleged unlawful act is a policy directed at the public at large[,] . . . the rationale behind the rule disappears." *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1153 (3d Cir. 1995); *see also Long v. Cnty. of Armstrong*, 679 F. App'x. 221, 222, 224 & n.5 (3d Cir. 2017) (finding that a woman killed by an escaped prisoner was not "part of a limited, discrete class" of residents who lived within "eyeshot" or "the immediate vicinity of the jail" because these limits could not distinguish the class from the "public at large") (internal quotation marks and citations omitted); *Crockett*, 2013 WL 2983117, at *8 (rejecting argument that SEPTA train riders on a particular track were distinguishable from "millions of passengers [who] ride SEPTA's regional rail system each year"); *Martinez v. California*, 444 U.S. 277, 279, 285 (1980) (finding that teenage girl killed after parole board recommended the release of a sex offender did not "face[] any special danger . . . as distinguished from the *public at large*") (emphasis added). As in these cases, Plaintiff's alleged facts merely place him within the public-at-large rather than within the requisite discrete class. As such, Plaintiff has failed to meet his burden as to the third element of the state-created danger theory.

Plaintiff also fails to allege any facts to support the existence of any relationship or contact between the PAAN Defendants and Plaintiff or any facts to support a relationship between Jardine

and Plaintiff and knowledge of such relationship by the PAAN Defendants. In the absence of such factual allegations, Plaintiff cannot meet the third element. *See Long*, 679 F. App'x. at 223 (affirming dismissal of state-created danger claim where there were no factual allegations to support any contact between the state and the plaintiff or any relationship between the murderer and the victim and the state's knowledge of such relationship).

Because Plaintiff's state-created danger claim fails to meet the first and third elements, this Court finds that Plaintiff has failed to assert a viable state-created danger claim. Accordingly, the PAAN Defendants' motion to dismiss Count I of the amended complaint is granted.

### *Plaintiff's Municipal Liability Claims Against the PAAN Defendants (Count II)*

At Count II of the amended complaint, Plaintiff asserts *Monell* claims against the PAAN Defendants. To allege a viable *Monell* claim, a plaintiff must plead facts sufficient to plausibly show (1) a constitutional violation by a municipal actor (2) that was caused by a municipal policy and/or custom. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978); *see also Connick v. Thompson*, 563 U.S. 51, 60 (2011) ("Plaintiffs who seek to impose liability on local governments under § 1983 must prove that 'action pursuant to official municipal policy' caused their injury.") (quoting *Monell*, 436 U.S. at 691). The policy or custom must be the "moving force" behind the constitutional tort. *Monell*, 436 U.S. at 694. Thus, the plaintiff must allege facts showing an "affirmative link" or "plausible nexus" between the policy or custom and the alleged constitutional violation. *Bielevicz v. Dubinon*, 915 F.2d 845, 850–51 (3d Cir. 1990). The policy or custom must also exhibit deliberate indifference to the constitutional rights of those it affects. *Beck v. City of Pittsburgh*, 89 F.3d 966, 972 (3d Cir. 1996). "Policy is made when a decisionmaker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." *Berg v. Cnty. of Allegheny*, 219 F.3d 261, 275 (3d Cir. 2000)

(internal quotation marks and citations omitted). "Customs are 'practices of state officials . . . so permanent and well settled as to virtually constitute law.'" *Id.* (quoting *Monell*, 436 U.S. at 691).

The PAAN Defendants argue that the amended complaint contains no factual allegations as to the existence of any policies or customs attributable to the PAAN Defendants (as opposed to the City) that exhibited the requisite deliberate indifference to Plaintiff's rights or that were the moving force behind the alleged violation of Plaintiff's rights. This Court agrees. At best, the factual allegations in the amended complaint pertaining to any alleged policies are attributable *solely* to the City. (*See, e.g.*, Am. Compl, ECF 17, at ¶¶ 85, 86). In the absence of any factual allegations to support the existence of any policies attributable to the PAAN Defendants, Plaintiff's *Monell* claims against the PAAN Defendants fail and are, therefore, dismissed.

### *Plaintiff's Negligence Claim Against Defendant Mosee (Count IV)*

At Count IV of the amended complaint, Plaintiff asserts a negligence claim against Defendant Mosee, who is alleged to be the Executive Director of both Defendant UAC and PAAN, both corporate entities. Generally, corporate officers and/or managers are not personally liable for a corporation's or its employees' tortious acts. *Chester-Cambridge Bank & Tr. Co. v. Rhodes*, 31 A.2d 128, 131 (Pa. 1943). There are, however, two exceptions to this general rule, *to wit*: the participation theory and piercing the corporate veil. *Einstein v. Carrasquillo*, 2021 WL 5882105, at *2 (E.D. Pa. Dec. 10, 2021). Defendant Mosee argues that Plaintiff has failed to allege facts sufficient to meet either of these two exceptions. This Court agrees.

In *Wicks v. Milzoco Builders, Inc.*, the Supreme Court of Pennsylvania confirmed that Pennsylvania law recognizes the participation theory as a basis of liability for an officer or manager of a corporation. 470 A.2d 86, 90 (Pa. 1983); *see also Moore v. Johnson & Johnson*, 907 F. Supp. 2d 646, 663 (E.D. Pa. 2012); *Sherfey v. Johnson & Johnson*, 2014 WL 715518, at *6 (E.D. Pa.

Jan. 29, 2014). "Liability under this theory attaches only where the corporate officer is an actor who participates in the wrongful acts." *Wicks*, 470 A.2d at 90. In other words, an officer is not personally liable to third persons for a tort "unless he specifically directed the particular act to be done or participated or cooperated therein." *Id.* (quoting 3A Fletcher, *Cyclopedia of the Law of Private Corporations* § 1137, 207). "Under this theory, a corporate officer/manager can be held personally liable for participating in the tortious activity of [a] company, but only where the manager 'specifically direct[s] the particular act to be done or participate[s], or cooperate[s] therein.'" *Jackson v. Burlington Coat Factory*, 2017 WL 3534983, at *3 (E.D. Pa. Aug. 17, 2017) (quoting *Wicks*, 470 A.2d at 90); *see also Shay v. Flight C. Helicopter Servs., Inc.*, 822 A.2d 1, 17-20 (Pa. Super. Ct. 2003). A corporate officer "can be personally liable for 'misfeasance,' *i.e.*, the 'improper performance of an act,' but not for mere 'nonfeasance,' *i.e.*, 'the omission of an act which a person ought to do.'" *Jackson*, 2017 WL 3534983, at *9 (quoting *Brindley v. Woodland Vill. Rest., Inc.*, 652 A.2d 865, 868 (Pa. Super. Ct. 1995) (relying on *Wicks*)). "[T]he mere averment that a corporate officer should have known the consequences of the liability-creating corporate act is . . . insufficient to impose liability." *Wicks*, 470 A.2d at 90.

Defendant Mosee argues that the amended complaint contains no factual allegations to support any conduct by him (Defendant Mosee), let alone any conduct that could support liability under the participation theory. This Court agrees. Indeed, the only conduct attributable to Defendant Mosee are that he had "direct responsibility for the CCIP" and he "reported to the City regarding CCIP's involvement in this shooting." (Am. Compl., ECF 17, at ¶¶ 8, 68). Nowhere does Plaintiff allege that Defendant Mosee "specifically directed the particular act" or acts that allegedly caused Plaintiff's injuries. *Wicks*, 470 A.2d at 90.

To the extent Plaintiff's amended complaint could be construed as alleging Defendant Mosee's participation in the alleged failure to train, such an allegation cannot establish liability for individuals under the participation theory. *Id*. ("Nevertheless, corporate officers and directors may not be held liable for mere nonfeasance."); *see also Aldorasi v. Crossroads Hosp. & Mgmt. Co., LLC*, 344 F. Supp. 3d 814, 822 (E.D. Pa. 2018) (applying Pennsylvania law and stating the rule that, under participation theory, a corporate officer is liable only for "the improper performance of an act," not "the omission of an act which a person ought to do") (quoting *Loeffler v. McShane*, 539 A.2d 876, 878 (Pa. Super. Ct. 1988)). As such, Plaintiff has not alleged a viable negligence claim against Defendant Mosee under the participation theory.

Plaintiff has also failed to allege facts sufficient to pierce the corporate veil. Under Pennsylvania law, a corporation is an independent entity, and a strong presumption exists against piercing the corporate veil. *Lumax Indus., Inc. v. Aultman*, 669 A.2d 893, 895 (Pa. 1995). To determine whether the corporate veil should be pierced, courts look at whether the following factors are present: "undercapitalization, failure to adhere to corporate formalities, substantial intermingling of corporate and personal affairs and use of the corporate form to perpetrate a fraud." *Kaites v. Com. of Pa., Dep't of Env't Res.*, 529 A.2d 1148, 1151 (Pa. Commw. Ct. 1987). Plaintiff does not allege any facts regarding any of these factors. In the absence of any such facts, coupled with Pennsylvania's strong presumption against piercing the corporate veil, Plaintiff has not stated a claim against Defendant Mosee under this theory.

Because Plaintiff has not alleged sufficient facts to satisfy either exception to the general rule against personal liability for corporate officers, Plaintiff's negligence claim against Defendant Mosee is dismissed.

**CONCLUSION**

For the reasons set forth, the PAAN Defendants' motion to dismiss Count I (state-created danger claims) and Count II (*Monell* claims) of the amended complaint is granted, and as such, Counts I and II are dismissed as to all PAAN Defendants. In addition, Defendant Mosee's motion to dismiss Count IV (negligence) of the amended complaint is granted, and this claim is dismissed as to Defendant Mosee *only*. An Order consistent with this Memorandum Opinion follows.

*NITZA I. QUIÑONES ALEJANDRO*, J.